Larry Garcia LUNA, a/k/a Larry Luna, a/k/a Lorenzo Luna, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–01–00091–CR.

Court of Appeals of Texas, Corpus Christi.

Feb. 21, 2002.

---

## OPINION

Opinion by Justice HINOJOSA.

A jury found appellant, Larry Garcia Luna, a/k/a Larry Luna, a/k/a Lorenzo Luna, guilty of nine counts of aggravated sexual assault of a child [1] and one count of reckless injury to a child,[2] and assessed his punishment at eighteen years imprisonment for each count of aggravated sexual assault, and two years imprisonment for the injury to a child. In three issues, appellant contends that: (1) a jury deliberating on punishment has the right to reconsider its determination of guilt after hearing additional evidence during the punishment phase of the trial; (2) a defendant's state and federal constitutional rights and state statutory rights are violated when the trial judge implicitly instructs the jury that it may not reconsider its determination of guilt and refuses to grant a mistrial; and (3) the trial court erred in failing to grant him a new trial "because the court misdirected the jury about the law concerning the jury's right to reconsider its determination of guilt after hearing additional evidence at the punishment phase." We affirm.

### A. BACKGROUND

Appellant was charged with committing nine separate sexual offenses against the daughter ("the child") of his live-in girlfriend, Laura DeLeon. The child was approximately seven to nine years of age when the offenses occurred. Appellant gave a detailed statement to the police in which he admitted committing various sexual offenses against the child, including

Mary Collins, Corpus Christi, TX, for Appellant.

Carlos Valdez, Nueces County District Attorney, Douglas K. Norman, Assistant District Attorney, Corpus Christi, TX, for Appellee.

Before Chief Justice VALDEZ and Justices HINOJOSA and RODRIGUEZ.

1. TEX. PEN.CODE ANN. § 22.021(a)(1) (Vernon Supp.2002). Aggravated sexual assault of a child is a first degree felony, punishable by imprisonment for life or for any term of not less than five years or more than ninety-nine years. Id. at § 12.32(a) (Vernon 1994).

2. TEX. PEN.CODE ANN. § 22.04 (Vernon Supp. 2002). Reckless injury to a child is a second degree felony, punishable by imprisonment for any term of not less than two years or more than twenty years. Id. at § 12.33 (Vernon 1994).

anal intercourse. He also admitted hitting her. At trial, appellant's confession was admitted into evidence. The child testified about the assaults, and DeLeon testified about the child's outcry statement. A sexual assault nurse examiner from Driscoll Children's Hospital testified that the child's physical examination revealed tears in her anus and bruises on her buttocks. Appellant took the stand and denied assaulting the child. The jury deliberated less than three hours before convicting appellant on all ten counts.

During the punishment phase, DeLeon was asked about the after-effects of the sexual assaults upon the child. She testified that the child had many problems, including "compulsive lying," fantasizing, nightmares, difficulty in school and toileting accidents. Richard Ward, the child's counselor, testified that the child's problems included self-hatred, self-mutilation, difficulties with school and socialization, nightmares, toileting accidents, fears, and fantasizing. He said that these symptoms "normally accompany severe stress and trauma." As an example, he testified that one of the child's fantasies was that "she saw a demon in her room who told her that he had made her stepfather do these things to her." The child believes the demon to be real. According to Ward, that fantasy is a type of withdrawal from reality.

During the jury's deliberation on punishment, several notes were sent out. Note One, filed at 3:18 p.m., stated, "May we obtain copies of today's testimony by Laura DeLeon & Mr. Ward?" The trial judge summoned the attorneys and told them she was going to inform the jury that the only way they could obtain a transcript of the testimony was to certify to the court that they were in disagreement about the testimony of the witnesses. Neither attor-

ney objected to the judge's response to Note One.

Note Two, filed at 3:30 p.m., stated, "Given todays [sic] testimony of these 2 people, doubts have been created in the minds of some jurors that may effect [sic] their priore [sic] decision; are jurors allowed to change their decision after hearing the testimony that has created doubts in their minds?"

Note Three, filed at 3:43 p.m., stated that the jury was in disagreement about Laura DeLeon's testimony concerning the child's compulsive lying, and requested a transcript of that testimony. The trial court recalled the parties and jurors to the courtroom, and the testimony in question was read back to the jury.

After the jurors had returned to the jury room and their deliberations, the trial court asked the attorneys about Note Two. The following colloquy occurred:

Defense Counsel: This is our position on this. We think that jury note number 2 is an indication of the jury's expressing reasonable doubt of the guilt/innocence of my client. The first thing I would do is ask the Court to instruct a verdict in our favor, a verdict of acquittal in each of the counts because of note number 2. So that's what I'm going to ask you to do right now.

The Court: I think it's important to identify those jurors if, in fact, they have reasonable doubt as to guilt. And I think it's important for the record to know that, whether they have some doubt and which ones are they, if we're going to go that way. But at first I think we need to do one step at a time. Let me give them a few more minutes.

Defense Counsel: That is fine, Judge.

Prosecutor: Judge, just in response to Mr. Gilmore's requesting for instruct-

ed verdict, I think that would be totally inappropriate because they definitely didn't say every single one of us had doubts.

Defense Counsel: Well, all it takes is one to have a doubt.

Prosecutor: For a hung jury.

Defense Counsel: For a hung jury, right.

Prosecutor: But not for an instructed verdict.

Defense Counsel: ... we are first moving for that, we're going to ask for that. The second thing is if the Court denies that then we're going to ask for a mistrial.

The Court: Okay. Bring your case law and we will give the jury some time.

*(Brief recess)*

The Court: ... [the] response to question 2 would be, "You must determine this case upon the evidence which you have heard and the exhibits which have been admitted into evidence during the punishment phase of this trial." Any objection by the State?

Prosecutor: None, Your Honor.

The Court: By the Defense?

Defense Counsel: I have no objection, Judge. I will say for the record that I'm not sure that that answers the jury's question. But I don't know of any other way at this point.

Prosecutor: And Judge, I was going to suggest maybe, "Continue your deliberation on the punishment phase."

Defense Counsel: Oh, I'm not going to suggest that. No.

The Court: Let's not push it.

At approximately 7:00 p.m., the jury returned the punishment verdict. The jurors were polled, and each stated that the verdict was his individual verdict.

Appellant filed a timely *pro se* notice of appeal and a timely *pro se* motion for new trial. Attached to the motion was the affidavit of juror Angie Menjares, which states, in part, as follows:

There were two testimonies that came to light after we had reached the verdict of guilty. If I had personally heard this before we reached the verdict, my decision would have been not guilty, because of insufficient evidence.

The trial court denied appellant's motion for new trial.

### B. Trial Court's Refusal to Enter Verdict of Acquittal and Refusal to Grant Mistrial

In his first issue, appellant asserts that a jury deliberating on punishment has the right to reconsider its determination of guilt in light of additional evidence admitted during the punishment phase of the trial. In his second issue, appellant contends that a defendant's state and federal constitutional rights and state statutory rights are violated when, after a jury deliberating on punishment asks the trial judge if it may reconsider its determination of guilt, the judge implicitly answers "no" by instructing the jury to continue deliberating on punishment, and refuses to grant a mistrial.

In these two issues, appellant argues that the trial court's refusal to enter a verdict of acquittal and refusal to grant a mistrial violated appellant's rights under article 37.07, section 3(c) of the code of criminal procedure and his rights under the Texas and federal constitutions. The State asserts appellant waived these issues by failing to properly preserve them in the trial court.

#### 1. *Preservation of Error*

The record reflects that appellant properly requested a directed verdict of acquit-

tal, arguing that the jury had indicated it had a reasonable doubt about the correctness of its verdict of guilty. The trial court did not explicitly deny the request, but did so implicitly in its response to Note Two. To preserve error, the record must show that the issue was sufficiently presented to the trial court, and that the trial court expressly or implicitly ruled on the issue, or refused to rule on the issue. TEX. R.APP. P. 33.1(a). We hold that appellant has preserved this issue for our review.

■ The record reflects, however, that appellant never formally moved for a mistrial. He told the trial court "... if the Court denies [the request for an acquittal], then we're going to ask for a mistrial." However, although the trial court implicitly denied the motion for acquittal, appellant never asked for a mistrial. In fact, appellant acquiesced to the continuation of jury deliberation. Furthermore, appellant's attorney urged his objection only on the ground that the jurors had "express[ed] reasonable doubt of the guilt/innocence of my client." He made no objection based on article 37.07, section 3(c), the Texas constitution, or the federal constitution. Without proper preservation, even constitutional error may be waived. TEX. R.APP. P. 33.1(a); *Wright v. State*, 28 S.W.3d 526, 536 (Tex.Crim.App.2000); *Dewberry v. State*, 4 S.W.3d 735, 752 & n. 16 (Tex.Crim.App.1999).[3] Accordingly, we hold appellant has failed to preserve these issues for our review, and they are waived.

Thus, the only issue preserved by appellant was the denial of his motion for acquittal, on the basis that the jury expressed reasonable doubt in Note Two

(*i.e.*, that Note Two acted as an informal verdict of not guilty).

### 2. *Classification of Note*

■ Appellant contends that Note Two was an informal verdict of acquittal. However, case law does not support his contention.

■ If the verdict of the jury is informal, its attention shall be called to it, and with its consent the verdict may, under the direction of the court, be reduced to the proper form. TEX.CODE CRIM. PROC. ANN. art. 37.10(a) (Vernon Supp.2002). Generally, a jury's verdict should be held good if the jury's intention can reasonably be ascertained. *Brinson v. State*, 570 S.W.2d 937, 939 (Tex.Crim.App.1978); *White v. State*, 866 S.W.2d 78, 86 (Tex.App.-Beaumont 1993, no pet.). A verdict should receive a liberal rather than a strict construction and, when a finding of the jury can be reasonably ascertained, the verdict is sufficient. *Smart v. State*, 144 Tex. Crim. 93, 161 S.W.2d 97, 99 (1942); *White*, 866 S.W.2d at 86. It is the duty of the trial court to reject unresponsive, incomplete, or insufficient verdicts, call the problem to the attention of the jury, and then have the problem corrected with the jury's consent or have the jury sent out again to reconsider their verdict. *Reese v. State*, 773 S.W.2d 314, 317 (Tex.Crim.App.1989).

In *Antwine v. State*, the court of criminal appeals held that a jury note must be plainly intended as an acquittal before it can be considered an informal verdict. *Antwine v. State*, 572 S.W.2d 541, 543 (Tex.Crim.App. [Panel Op.] 1978). In that case, the jury sent out a note saying they were "hopelessly deadlocked in their 'ef-

---

**3.** We note that appellant does not argue on appeal that any error present is fundamental or structural error, which may be raised for the first time on appeal. *See Blue v. State*, 41 S.W.3d 129, 137 (Tex.Crim.App.2000) (J.

Keasler conc.); *Marin v. State*, 851 S.W.2d 275, 278–80 (Tex.Crim.App.1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997).

forts to reach a verdict.'" *Id.* The court held this was not an informal verdict because it was not plainly intended as an acquittal. *Id.*

In *State ex rel. Hawthorn v. Giblin,* jury notes indicated that the jury had voted 12–0 "not guilty" on an attempted murder charge, but were deadlocked 6–6 on an aggravated assault charge. *State ex rel. Hawthorn v. Giblin,* 589 S.W.2d 431, 432–33 (Tex.Crim.App. [Panel Op.] 1979). The trial court declared a mistrial and entered a judgment of acquittal on the attempted murder charge. *Id.* The State sought a writ of prohibition, and the court of criminal appeals held that the jury notes

> were written in answer to questions from the trial court as to the status of the jury's deliberations. This fact, and the jury's obvious deadlock on the aggravated assault charge, leads us to the conclusion that these communications were intended merely as reports on the jury's progress toward a verdict. Certainly, we cannot conclude that these communications were plainly intended to operate as an acquittal. We hold that no verdict was rendered ... and that as a consequence no lawful judgment may be entered therein.

*Id.* (citing *Antwine,* 572 S.W.2d at 541).

After reviewing the record, we conclude that the jury note was not plainly intended as an acquittal. Thus, it cannot be viewed as an informal verdict. Appellant's first and second issues are overruled.

## C. TRIAL COURT'S FAILURE TO GRANT A NEW TRIAL

In his third issue, appellant contends the trial court erred in failing to grant him a new trial, "because the court misdirected the jury about the law concerning the jury's right to reconsider its determination of guilt after hearing additional evidence at the punishment phase" of the trial. In his

motion for new trial, appellant argued that "if not for the court's instructions to the jury to continue deliberating on the punishment, the jury should have been entitled, as a matter of right, to change their verdict after re-examining or reviewing the testimony."

 A defendant must be granted a new trial when the trial court has misdirected the jury about the law or has committed some other material error likely to injure the defendant's rights. TEX.R.APP. P. 21.3(b). The grant or denial of a motion for new trial is entrusted to the discretion of the trial court. *Lewis v. State,* 911 S.W.2d 1, 7 (Tex.Crim.App.1995); *State v. Gonzalez,* 855 S.W.2d 692, 696 (Tex.Crim. App.1993). The only question on appeal is whether the trial court's decision was arbitrary or unreasonable. *Gonzalez,* 855 S.W.2d at 695 n. 4.

The issue here is whether the trial court abused its discretion in denying appellant's motion for new trial which asserted that the court had "misdirected" the jury in response to Note Two, by instructing them to "determine this case upon the evidence which you have heard and the exhibits which have been admitted into evidence during the punishment phase of this trial." In other words, did the jury have the right to reconsider its guilty verdict after hearing evidence during the punishment phase that suggested the child had problems distinguishing reality from fantasy?

### 1. *Federal Constitutional Rights*

 As in his first two issues, appellant argues that the trial court's actions violated several of his federal constitutional rights, and that its denial of his motion for new trial was, therefore, erroneous. As we noted above, to preserve error, the record must show that the issue was sufficiently presented to the trial court, and

that the trial court expressly or implicitly ruled on the issue, or refused to rule on the issue; even constitutional error may be waived. TEX.R.APP. P. 33.1(a); *Wright,* 28 S.W.3d at 536; *Dewberry,* 4 S.W.3d at 752 & n. 16.

The record reflects that appellant never presented this issue to the trial court in his motion for new trial. We hold appellant failed to preserve this issue for our review, and it is waived.

### 2. *Statutory Rights*

■■■ A verdict is a written declaration by a jury of its decision of the issue submitted to it in the case. TEX.CODE CRIM. PROC. ANN. art. 37.01 (Vernon 1981). In Texas, innocence or guilt is determined first; if necessary, punishment is determined in a separate hearing. *Id.* at art. 37.07, § 2 (Vernon Supp.2002). The right to jury sentencing is purely statutory; there is no Texas constitutional right to jury sentencing. *Washington v. State,* 677 S.W.2d 524, 527 (Tex.Crim.App.1984), *overruled on other grounds by Bell v. State,* 994 S.W.2d 173 (Tex.Crim.App. 1999); *Tinney v. State,* 578 S.W.2d 137, 138 (Tex.Crim.App.1979); *Ex parte Giles,* 502 S.W.2d 774, 782 (Tex.Crim.App.1973). Punishment shall be assessed by the same jury that determined the defendant's guilt. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 2(b) (Vernon Supp.2002). Where punishment is decided by the jury, "the verdict shall not be complete until the jury has rendered a verdict on both the guilt or the innocence of the defendant and the amount of punishment, where the jury finds the defendant guilty." *Id.* at § 3(c) (Vernon Supp.2002).

Appellant argues that, under article 37.07, a verdict is not "complete" until punishment has been assessed, and that up until the time punishment is assessed, a jury may reconsider its decision as to guilt. We disagree.

■■■ First, there is no statutory provision specifically allowing a jury to reconsider its decision on guilt after hearing evidence during the punishment phase of a criminal trial. Therefore, we must construe the existing statutes to determine the answer. In interpreting statutes, we seek always to effectuate the collective legislative intent or purpose. *Sanchez v. State,* 23 S.W.3d 30, 34 (Tex.Crim.App. 2000). Appellate courts must give effect to the whole statute, not interpreting any phrase in isolation, but looking at the phrase *in situ,* or in context of the entire statute in question. *Nguyen v. State,* 1 S.W.3d 694, 696 (Tex.Crim.App.1999); *Naranjo v. State,* 890 S.W.2d 467, 470 (Tex.App.-Corpus Christi 1994, pet. ref'd). If the meaning of the statute should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991). However, where application of a statute's plain language would lead to absurd consequences that the Legislature could not possibly have intended, we should not apply the language literally. *Id.* When we interpret ambiguous statutes, we may consider extratextual factors. *Sanchez,* 23 S.W.3d at 34 (examining as "extratextual factors" (1) the evident purpose of article 37.07, § 3(c), "to increase the reliability of jury verdicts," and (2) the fact that if the Legislature had intended to exempt the jury's decision on the sudden passion issue from the statutory unanimity requirement, it would have expressly done so).

In Texas, criminal trials are bifurcated into a guilt/innocence phase and a punishment phase. *See generally* TEX.CODE CRIM. PROC. ANN. art. 37.07 (Vernon 1981 and Supp.2002). Article 37.07 authorizes the trial court to "first submit to the jury the

issue of guilt or innocence of the defendant of the offense or offenses charged, without authorizing the jury to pass upon the punishment to be imposed." *Id.* at § 2(a). If a finding of guilty is returned, a separate hearing is held at which evidence relevant to punishment may be introduced by the State and by the defendant. *See id.* at § 3(a). Punishment is then assessed by the trial court or, if the defendant has so elected, by the jury. *Id.* at § 2(b).

The Legislature clearly intended "determination of guilt" and "assessment of punishment" to be two separate proceedings. It made no provision for a reconsideration of the decision on guilt, after the punishment phase has begun. Adopting appellant's interpretation of article 37.07, section 3(c) would negate the system of bifurcation clearly intended by the Legislature, and would in effect transform the determination of guilt and punishment into a single proceeding.

Second, article 37.07, section 3(c) states:

In cases where the matter of punishment is referred to the jury, the verdict shall not be complete until the jury has rendered a verdict both on the guilt or innocence of the defendant and the amount of punishment, where the jury finds the defendant guilty. In the event the jury shall fail to agree, a mistrial shall be declared, the jury shall be discharged, *and no jeopardy shall attach.*

*Id.* at § 3(c) (emphasis added). The purpose of section 3(c) is to assure that, in cases where the jury cannot agree on punishment, double jeopardy will not bar the defendant's retrial.

Third, had the jury really felt appellant was not guilty, it could have refused to return a punishment, or failed to agree on punishment. Instead, the jury unanimously returned a verdict, and all twelve jurors represented to the trial court, under oath, that the verdict was his or her individual verdict.

For the above reasons, we reject appellant's interpretation of article 37.07, section 3(c) as giving the jury an absolute right to reconsider its verdict on guilt, after hearing evidence relevant to punishment. We hold the trial court did not abuse its discretion in denying appellant's motion for new trial on this ground. Appellant's third issue is overruled.

The judgment of the trial court is affirmed.