

NUMBER 13-10-00113-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

TRACE BRITTON ADAMS,                                          Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

On appeal from the 24th District Court
of Calhoun County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides and Perkes**
**Memorandum Opinion by Justice Benavides**

A Calhoun County jury convicted appellant Trace Britton Adams of possession of pseudoephedrine designated as an immediate precursor, with intent to manufacture methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.124 (West 2010). The jury could not, however, reach a decision as to punishment, and the trial court

declared a mistrial.   A new jury, selected solely for the punishment phase, sentenced Adams to eleven years' imprisonment with a $1,000 fine and court costs.   In three issues, Adams appeals his conviction and sentence on the grounds that (1) insufficient evidence connected Adams to any pseudoephedrine or other items seized on the property; (2) indicted co-defendant Dawn McDonald's testimony implicating Adams in the crime was uncorroborated; and (3) the trial court violated Adams's right to a jury trial by retrying only the punishment phase of his case.   We affirm.

## I.   BACKGROUND

Adams was arrested, indicted, and charged with possession of pseudoephedrine with intent to unlawfully manufacture methamphetamine.   The charge—to which Adams pleaded not guilty—stemmed from an October 27, 2008 law enforcement raid of a mobile home property possessed by Adams's then-girlfriend and co-defendant, McDonald. Police obtained the search warrant based upon two separate tips provided by informant Jimmy Colburn and McDonald that Adams was running a methamphetamine laboratory on the property.   It appears that at the time of the raid, Adams lived on the property with McDonald and her children.

Law enforcement executed a search warrant and seized various items from the mobile home and surrounding property including:   (1) chemicals and fluids identified as part of the methamphetamine manufacturing process; (2) stripped lithium batteries; (3) a laptop computer; (4) a digital scale; (5) dry ice; (6) handwritten chemical formulas and calculations; (7) sales receipts from various stores evidencing the purchase of these items; and (8) crushed-up pseudoephedrine in an unmarked pill bottle.

During the guilt/innocence phase of the trial, the jury heard testimony from law

2

enforcement officers who conducted the raid on the property. The officers testified about the subsequent investigation about the items seized and the purpose they served. The jury also heard testimony from McDonald, who testified about the items seized, how they were procured, and how they were used by Adams to make methamphetamine. Adams did not testify at trial, and prior to voir dire, elected to have the jury assess punishment, if convicted. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 § 2(b)(2) (West Supp. 2010). The first jury found Adams guilty of the charged offense, but could not reach a consensus on punishment. Consequently, on December 11, 2009, the trial court declared a mistrial on punishment.

On February 1, 2010, a new jury was impaneled[1] and heard evidence related solely to the issue of Adams's punishment. The second jury sentenced Adams to eleven years' imprisonment and assessed a $1,000 fine and court costs. Following his punishment, Adams filed a motion for new trial, which was denied by operation of law. TEX. R. APP. P. 21.8. This appeal ensued.

## II. ISSUE ONE: SUFFICIENCY OF "AFFIRMATIVE LINKS" EVIDENCE

By his first issue, Adams argues that the evidence was insufficient to connect him to any pseudoephedrine or other items to make methamphetamine that were seized by police in the October 27, 2008 raid because he was only visiting McDonald's property for a few days.

### A. Standard of Review

In assessing a challenge to the sufficiency of the evidence to support a criminal conviction, we must determine whether the jury was rationally justified in finding guilt

---

[1] The Honorable Judge Juergen "Skipper" Koetter presided over the original proceedings, and the Honorable Judge Joseph P. Kelly presided over the re-trial of punishment.

3

beyond a reasonable doubt, considering all of the evidence in a light supporting the verdict. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 839, 902 (Tex. Crim. App. 2010) (plurality op.). This standard of review preserves a jury's fact-finder and "weigher of evidence" roles "through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319. "[S]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A correct charge is one that does not increase the State's burden or restrict the State's theories of liability, but rather one that "adequately describes the particular offense for which the defendant was tried." *Id.*

## B. Discussion

Adams was convicted of possession of pseudoephedrine, designated as an immediate precursor, with intent to manufacture methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.124 (West 2010). Adams's argument rests on the possession element of the charged crime. To prove unlawful possession, the State must prove that the defendant (1) exercised control, management, or care over the substance; and (2) knew the matter possessed was contraband. Furthermore, "[w]hen a defendant is not in exclusive possession of the place where the controlled substance is found, the State must prove additional independent facts and circumstances that affirmatively link the defendant to the contraband in such a way that it can be concluded that the defendant had knowledge of the contraband and exercised control over it." *Nhem v. State*, 129 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2004, no pet.). "An

4

affirmative link generates a reasonable inference that the defendant knew of the contraband's existence and exercised control over it." *Id.* This connection must establish that a defendant's connection to the contraband found "was more than just fortuitous." *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995) (en banc). The prevailing policy behind this so-called "affirmative links rule" is to protect an innocent bystander from conviction merely because he or she was in close proximity to someone else's contraband. *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006).

Adams argues that several factors indicate a failure by the State to affirmatively link him to the pseudoephedrine, including: (1) that Adams made no attempt to flee the scene; (2) that police testimony at trial that could not identify who was driving the suburban, where a laptop computer was found; (3) no evidence existed showing that Adams knew where the contraband was located; (4) Adams made no incriminating statements connecting him to the contraband; (5) Adams had no contraband on his person at the time of arrest nor was there any indication that he was "high"; (6) others, namely McDonald, were present at the time of the search; and (7) that a state law enforcement witness described the searched property as a "small" meth lab. While some of the factors asserted by Adams are relevant to an affirmative-links analysis, they are neither exclusive nor mandatory to our analysis because each case is examined on its own facts. *See Nhem*, 129 S.W.3d at 699–700 (citing *Roberson v. State*, 80 S.W.3d 730, 736 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (noting that "a factor that contributes to the sufficiency of the evidence in one case may be of little or no value in a different case.").

Preliminarily, there is no question as to whether Adams lived on the property at

the time of the October 27, 2008 raid. By his own admission in his brief, Adams was staying on McDonald's property when police executed the search warrant and discovered the contraband. McDonald also testified that Adams moved back onto her property beginning October 11, 2008. The evidence does not support, however, that Adams exercised exclusive control of the place where the pseudoephedrine was found. Therefore, we continue our analysis under the *Nhem* standard.

On the issue of whether there are sufficient links to support the element of possession, State's witness, former Port Lavaca police officer, Donald Keil, testified that during the raid, McDonald stated that an unmarked pill bottle in her bedroom—containing a substance later tested to be crushed-up pseudoephedrine—belonged to Adams. This identification of ownership, without more, is insufficient. *See Nhem*, 123 S.W.3d at 699. Accordingly, the trial court admitted the State's evidence that linked the pseudoephedrine and other items to Adams's ownership, control, and knowledge of existence including: (1) purchase receipts of pseudoephedrine from various pharmacies in and around Port Lavaca that were found in Adams's wallet, which documented various purchases of several grams of pseudoephedrine over a two-week period; (2) business records and video captures of the individual pharmacies' points of sale that identified Adams as the buyer of the pseudoephedrine and corroborated the purchase receipts; and (3) several research documents found on Adams's laptop computer that dealt with general information about the history and use of methamphetamines, how to manufacture methamphetamines, and information on the U.S. Drug Enforcement Agency's efforts to regulate the sale of methamphetamines by pharmacies.

6

Viewed in a light supporting the verdict, we hold that the State offered sufficient evidence to link Adams to the pseudoephedrine found on the property that was searched.    We overrule Adams's first issue.

### III.    ISSUE TWO:    SUFFICIENCY OF CORROBORATION EVIDENCE

By his second issue, Adams argues that evidence, as required by article 38.14 of the Texas Code of Criminal Procedure, insufficiently corroborated co-defendant McDonald's testimony, which implicated Adams in the crime charged.    *See* TEX. CRIM. PROC. CODE ANN. art. 38.14 (West 2005).

### A.  Standard of Review

The Texas Court of Criminal Appeals laid out the standard of review for sufficiency of non-accomplice evidence as follows:

> When reviewing the sufficiency of non-accomplice evidence under Article 38.14, we decide whether the inculpatory evidence tends to connect the accused to the commission of the offense. The sufficiency of non-accomplice evidence is judged according to the particular facts and circumstances of each case.   The direct or circumstantial non-accomplice evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense.   So when there are conflicting views of the evidence—one that tends to connect the accused to the offense and one that does not—we will defer to the factfinder's resolution of the evidence.   Therefore, it is not appropriate for appellate courts to independently construe the non-accomplice evidence.

*Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011).    Furthermore, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt, but rather tends to connect the accused to the commission of the crime and show that rational jurors would connect the defendant to the offense.    *See Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).

7

**B. Discussion**

Adams asserts that the State relied almost exclusively on co-defendant McDonald's testimony to link Adams to the crime. We disagree. In addition to McDonald's testimony, the State relied upon (1) the research documents on Adams's laptop computer; (2) receipts evidencing purchases of pseudoephedrine and various other items linked to the manufacture of methamphetamines found in Adams's wallet; and (3) corroboration video and business record evidence of Adams's purchases reflected on the receipts. In our sufficiency review, we cannot supplant the jury's verdict with our own view of the evidence. *See Smith*, 332 S.W.3d at 442. Instead, we give deference to the jury's resolution of the facts and conclude that the evidence was sufficient to connect Adams to the crime charged and did not rest exclusively on McDonald's testimony. *See id.* We overrule Adams's second issue.

## IV. ISSUE THREE: RETRIAL ON PUNISHMENT ONLY

By his third issue, Adams argues that the trial court violated his right to trial by jury under article 1.12 of the code of criminal procedure when it ordered a retrial only on the issue of punishment and not also on the issue of guilt and innocence. Adams argues this violation requires a new trial on both phases. *See* TEX. CRIM. PROC. CODE ANN. art. 1.12 (West 2005).

**A. Standard of Review and Applicable Law**

A defendant is entitled to a new trial if the trial court has misdirected the jury about the law or has committed some other material error likely to injure the defendant's rights. TEX. R. APP. P. 21.3(b). The decision to grant or deny a new trial lies within the discretion of the trial court and will not be disturbed unless the trial court's decision was

8

arbitrary or unreasonable. *See Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995) (en banc) (citing *State v. Gonzalez*, 855 S.W.2d 692, 695 n. 4 (Tex. Crim. App. 1993) (en banc)). Therefore, our review on this issue is limited to whether the trial court's decision to deny a new guilt-innocence trial in this case was arbitrary or unreasonable.

The right to trial by jury as to guilt or innocence is both constitutional and statutory in Texas. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 15; TEX. CODE CRIM. PROC. ANN. art. 1.12 (West 2005). However, the right to have a jury assess punishment is purely statutory. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 §2 (b) (West Supp. 2010); *Allen v. State*, 552 S.W.2d 843, 847 (Tex. Crim. App. 1977) (recognizing that "an accused has no constitutional right to have a jury assess punishment."). When interpreting statutes, we must effectuate legislative intent or purpose by giving effect to the plain meaning of the statute. *See Luna v. State*, 70 S.W.3d 354, 361 (Tex. App.—Corpus Christi 2002, pet. ref'd).

The Texas Code of Criminal Procedure states that punishment shall be assessed by the same jury, except as provided by section 3(c) of the same article. TEX. CODE CRIM. PROC. ANN. art. 37.07 § 2(b). Section 3(c) states, in part:

> In the event the jury shall fail to agree on the issue of punishment, a mistrial shall be declared only in the punishment phase of the trial, the jury shall be discharged, and no jeopardy shall attach. The court shall impanel another jury as soon as practicable to determine the issue of punishment.

*Id.* § 3(c) (West Supp. 2010).

## B. Discussion

We read article 37.07 of the code of criminal procedure as an intention on the part of the legislature to bifurcate criminal trials into two phases—first, as to guilt/innocence and second, as to punishment. *See* TEX. CRIM. PROC. CODE ANN. art. 37.07 (West.

9

Supp. 2010); *Luna*, 70 S.W.3d at 361. Adams argues that a stand-alone, punishment-phase jury that did not hear his full case denies him a fact-finder who had seen the "whole picture" before assessing punishment. We disagree. Adopting Adams's interpretation of the statute would "negate the system of bifurcation clearly intended by the Legislature, and would in effect transform the determination of guilt and punishment into a single proceeding." *See id.* Through article 37.07, section 3(c), the Texas legislature provided a clear safeguard of a defendant's rights and mechanism for retrial when a jury cannot agree on punishment. First, to ensure that a defendant's constitutional rights are not violated, the statute is clear that "no jeopardy shall attach," upon the declaration of a mistrial as to the punishment phase. TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3 (c). Second, the statute admonishes the trial court to impanel another jury to "determine the issue of punishment," as soon as practicable. *Id.* Because we conclude that the trial court's decision was not arbitrary or unreasonable and, thus, did not abuse its discretion in declaring a mistrial on punishment only and ordering a retrial solely as to that phase, we overrule Adams's third issue.

## V. CONCLUSION

The judgment of the trial court is affirmed.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
15th day of December, 2011.