Leonard HENDERSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–00–666–CR.

Court of Appeals of Texas, Corpus Christi.

July 18, 2002.

Rehearing Overruled Aug. 22, 2002.

Vincent Gonzalez, Corpus Christi, for appellant.

Carlos Valdez, Nueces County District Attorney, Douglas K. Norman, Asst. District Attorney, Corpus Christi, for the State.

BEFORE: Chief Justice VALDEZ and Justices HINOJOSA and RODRIGUEZ.

## OPINION

Opinion by Justice RODRIGUEZ.

Appellant, Leonard Henderson, was charged with the felony offense of aggravated robbery as a repeat offender. After the trial court denied his motion for instructed verdict,[1] Henderson was found guilty and sentenced to sixty years confinement. Henderson subsequently filed a motion for new trial which was also denied by the trial court.[2] By three points of error, Henderson contends the trial court erred in denying his motions for instructed verdict and new trial. We affirm.

## I. FACTS

At trial, police officers Michael Carranza and Bruce Ward testified the victim, Andrew Hartwell, flagged them down and informed them he had been beaten and robbed in a nearby alleyway. Hartwell told the officers one of the men who robbed him was wearing red shorts and a red shirt, and that the man's accomplices referred to him as "Hollywood."

Officer Ward testified he knew a man named Leonard Henderson who went by the name "Hollywood." After his initial conversation with Hartwell, Officer Ward went to Henderson's house and found him sitting on the front porch. Officer Ward arrested Henderson and took him back to Hartwell, who identified Henderson as one of the men responsible for the attack. Henderson was wearing red shorts and no shirt at the time of the identification.

During the trial, Henderson admitted he had committed previous felonies, including robbery, aggravated assault on a peace officer, and possession of cocaine. He also admitted to a lengthy list of misdemeanor convictions.

## I. ANALYSIS

### A. Appellant's Motion for Instructed Verdict

■ By his first point of error, Henderson contends the trial court erred by not granting his motion for instructed verdict. As the basis for his motion, he argued the on-scene and in-court identifications of him were the fruit of an illegal arrest, and thus, were inadmissible as evidence.

■ To preserve a complaint for appellate review, the appellant must make a specific, timely objection and obtain a ruling on the objection. See Tex.R.App.P 33.1(a)(1)(A); *Wilson v. State,* 71 S.W.3d 346, 349 (Tex.Crim.App.2002); *Dinkins v. State,* 894 S.W.2d 330, 355 (Tex.Crim.App. 1995). An objection is timely when it is raised at the earliest possible opportunity. *Wilson,* 71 S.W.3d at 349. In other words, to be timely, an objection should be raised as soon as the defense knows or should know an error has occurred. *Dinkins,* 894 S.W.2d at 355. This generally happens when the evidence is admitted. *Id.*

In the present case, officers Carranza and Ward testified about the manner in which Henderson's arrest and identification took place without any objection from Henderson. Additionally, Henderson did

---

1. Henderson raised a motion for instructed verdict after the State rested. He claimed the testimony of the arresting officers showed that his arrest was illegal and therefore any evidence obtained from the arrest was not admissible.

2. Henderson brought a motion for new trial claiming the trial court misdirected the jury about the law, and that new material evidence favorable to his case was discovered after the trial.

not file a motion to suppress before or during trial. Instead, he waited until the State closed and then asked for an instructed verdict. We find Henderson's motion for instructed verdict failed to preserve his complaint for appellate review. Henderson's first point of error is overruled.

### B. The Trial Court's Denial of Motion for New Trial

■ By his second point of error, Henderson contends the trial court erred by not granting his motion for new trial because the trial court misdirected the jury about the law. Henderson relies on rule 21.3(b) of the rules of appellate procedure arguing that any misdirection of a jury about the law by the trial judge automatically warrants a new trial. Rule 21.3(b) states: "A defendant must be granted a new trial when the trial court has misdirected the jury about the law or has committed some other material error likely to injure the defendant's rights." TEX.R.APP.P. 21.3(b); *Luna v. State,* 70 S.W.3d 354, 360 (Tex.App.—Corpus Christi 2002, no pet.). However, the court of criminal appeals has held that, according to article 36.19 of the code of criminal procedure, a misdirection of the law by the trial court to a jury does not automatically warrant reversal of the trial court's verdict, but rather is subject to a harm analysis. *See Almanza v. State,* 686 S.W.2d 157, 171–74 (Tex.Crim.App.1985); *see also* TEX.CODE.CRIM.PROC.ANN. art. 36.19 (Vernon 1981).

■ When reviewing an issue pertaining to the possible misdirection of a jury about the law, the reviewing court must first determine whether there was error contained in the jury charge. *See Mann v.*

*State,* 964 S.W.2d 639, 641 (Tex.Crim.App. 1998) (citing *Abdnor v. State,* 871 S.W.2d 726 (Tex.Crim.App.1994)). In the present case, the trial court granted the State's request that a paragraph explaining the inevitable discovery rule, as it related to the possible unlawful arrest of Henderson, be added at the end of section six of the jury charge.[3] The paragraph in question read as follows:

Although you may find that the arrest of the Defendant was not lawful, you are further instructed that if the identity of the Defendant as a result of proper police investigative techniques would have been inevitably discovered separate and apart from the on-scene identification by Andrew Hartwell, then you may then [sic] consider such testimony of said Officers and Andrew Hartwell during your deliberations.

Henderson argues, and the State concedes in its brief on appeal, that the State of Texas does not recognize an inevitable discovery rule. *See Roquemore v. State,* 60 S.W.3d 862, 872 (Tex.Crim.App.2001); *Chavez v. State,* 9 S.W.3d 817, 819 (Tex. Crim.App.2000); *State v. Daugherty,* 931 S.W.2d 268, 269–70 (Tex.Crim.App.1996); *see also* TEX.CODE.CRIM.PROC.ANN. art. 38.23(a) (Vernon Supp.2002). Therefore, we hold the trial court's inclusion of an instruction in the jury charge regarding the inevitable discovery doctrine constituted a misdirection to the jury about the law. *See Daugherty,* 931 S.W.2d at 269–70; *see also Mann,* 964 S.W.2d at 641.

■ Second, we will determine whether the error resulted in sufficient harm to warrant reversal. *See Mann,* 964 S.W.2d at 641; *see also Almanza,* 686 S.W.2d at 171. The standard used to de-

---

**3.** The inevitable discovery doctrine renders the exclusionary rule inapplicable to otherwise suppressible evidence if said evidence would have been inevitably discovered by lawful means. *United States v. Grosenheider,* 200 F.3d 321, 328 n. 8 (5th Cir.2000).

termine whether sufficient harm results from a charging error by the trial court depends on whether the appellant properly objected to the error. *Almanza,* 686 S.W.2d at 171. If a timely objection was made in the trial court regarding the error in the jury charge, reversal is required as long as the error was not harmless. *Mann,* 964 S.W.2d at 641; *Escobar v. State,* 28 S.W.3d 767, 777 (Tex.App.—Corpus Christi 2000, pet ref'd) (citing *Almanza,* 686 S.W.2d at 171). However, if no proper objection to the error was made at trial, but is raised for the first time on appeal, the appellant must show that egregious harm resulted from the error. *Mann,* 964 S.W.2d at 641; *Almanza,* 686 S.W.2d at 171–72; *Escobar,* 28 S.W.3d at 777. Egregious harm constitutes error that was so severe it deprived the appellant of a fair and impartial trial. *Almanza,* 686 S.W.2d at 172; *Escobar,* 28 S.W.3d at 777.

■ Henderson did not make an objection to the inclusion of the inevitable discovery doctrine in the jury charge. *See* Tex.R.App.P. 33.1. Since a proper objection to the charging error was not made, Henderson has to show the error caused such egregious harm that it deprived him of a fair and impartial trial. *See Almanza,* 686 S.W.2d at 172; *Escobar,* 28 S.W.3d at 777.

■ The inclusion of the inevitable discovery doctrine in the jury charge instructed the jury that, even if they found the arrest unlawful, if they found the defendant's identity would have been "inevitably discovered" separate and apart from the on-scene identification by Hartwell, the testimony of the police officers and Hartwell concerning the identity of the Henderson could be considered. Henderson contends if the jury had not been misdirected, the on-scene and in-court identifications of him by Hartwell

would not have been considered by the jury. It is true that the on-scene identification of Henderson by Hartwell would not have been admissible if his arrest was unlawful. *See* Tex.Code Crim.Proc.Ann. art. 38.23(a) (Vernon Supp.2002); *State v. Ballard,* 987 S.W.2d 889, 892 (Tex.Crim. App.1999). However, a defendant's face is not a suppressible fruit of an illegal arrest. *United States v. Crews,* 445 U.S. 463, 477, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980); *Pichon v. State,* 683 S.W.2d 422, 426 (Tex. Crim.App.1984); *Mungia v. State,* 911 S.W.2d 164, 166 n. 5 (Tex.App.—Corpus Christi 1995, no pet.). Hartwell's in-court identification occurred after, and independent of, the alleged illegal arrest. Therefore, even if the trial court had not misdirected the jury regarding the inevitable discovery doctrine, the jury would have still been able to consider the in-court identification of Henderson. *See Crews,* 445 U.S. at 477, 100 S.Ct. 1244.

When the testimony tainted by the alleged unlawful arrest is not considered, we find enough evidence still remained for a reasonable trier of fact to find Henderson guilty beyond a reasonable doubt. Therefore, the harm, if any, suffered by Henderson was not sufficient enough to deprive him of a fair and impartial trial. *See Almanza,* 686 S.W.2d at 172; *Escobar,* 28 S.W.3d at 777. Henderson's second point of error is overruled.

■ By his third point of error, Henderson contends the trial court erred by denying his motion for new trial because material evidence favorable to his position had been discovered. The Texas Code of Criminal Procedure provides that a new trial shall be given to an accused where material evidence favorable to the accused has been discovered since trial. Tex.Code Crim.Proc.Ann. art. 40.001 (Vernon Supp.2002). The trial court may, in its discretion, grant a new trial based on

newly discovered evidence, and its ruling will not be overturned on appeal absent an abuse of discretion. *Keeter v. State,* 74 S.W.3d 31, 37 (2002); *Drew v. State,* 743 S.W.2d 207, 225 (Tex.Crim.App.1987); *Moreno v. State,* 1 S.W.3d 846, 852–53 (Tex.App.—Corpus Christi 1999, pet ref'd). To establish an abuse of discretion, the appellant must show: (1) the evidence was unknown to him before trial; (2) his failure to discover the evidence was not due to his want of diligence; (3) it is probably true and its materiality will probably bring about a different result upon a new trial; (4) it is competent, not merely cumulative, corroborative, collateral, or impeaching. *Drew,* 743 S.W.2d at 226; *Moreno,* 1 S.W.3d at 853.

 The "probably true" requirement means the trial court must determine that the whole record presents no good cause to doubt the credibility of the witness whose testimony constitutes new evidence, either by reason of the facts proven at the trial or by the controverting affidavits on the motion, or otherwise. *Jones v. State,* 711 S.W.2d 35, 37 n. 4 (Tex.Crim.App.1986); *Moreno,* 1 S.W.3d at 853. Stated otherwise, the trial court can find the new evidence is probably not true when it contradicts either the mass of reliable testimony at trial or the defendant's own testimony, or the new testimony is inconsistent or otherwise inherently suspect. *See Jones,* 711 S.W.2d at 37 n. 4.

 The new witness testimony offered by Henderson in the present case contains several inconsistencies and contradictions to the record. The new witness, Homer Lee Petty, states that Henderson was a bystander at the scene of the crime who did not take part in the commission of the crime. This contradicts Henderson's own testimony at trial that he was nowhere near the crime scene but rather at his house with two of his friends.

Another contradiction exists in Petty's statement that, at the scene of the crime, Hartwell asked him where he could obtain marijuana. This is inconsistent with Hartwell's testimony regarding the events that took place. Finally, Petty admits in his affidavit that he initially "decided to leave" when the police showed up after the robbery, and offers no explanation for refusing to come forward with this evidence before trial. Based on these conflicts, the trial court may have found that Petty's testimony was probably not true. *See id.*

After reviewing the evidence, we hold the trial judge did not abuse his discretion by denying Henderson's motion for a new trial. *Drew,* 743 S.W.2d at 226; *Moreno,* 1 S.W.3d at 853. Henderson's third point of error is overruled.

Accordingly, we affirm the trial court's judgment.