No. 04-02-00685-CR


Andre HAYGOOD,

Appellant


v.


The STATE of Texas,

Appellee


From the 186th Judicial District Court, Bexar County, Texas 

Trial Court No. 2000-CR-0906

Honorable Samuel B. Katz, Judge Presiding


Opinion by: Sandee Bryan Marion, Justice

 

Sitting: Alma L. López, Chief Justice

 Sandee Bryan Marion, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: November 12, 2003


AFFIRMED



 A jury found defendant, Andre Haygood, guilty of murder and assessed punishment at life
imprisonment and a $10,000 fine. In five issues on appeal, defendant challenges the sufficiency of the
evidence and various rulings by the trial court. Because the evidence is sufficient to support the verdict and
we find no abuse of discretion, we affirm.


SUFFICIENCY OF THE EVIDENCE

 In his third issue, defendant asserts the evidence is factually insufficient to support his conviction.
We review the factual sufficiency of the evidence under the appropriate standard of review. See Johnson
v. State, 23 S.W.3d 1, 6-7, 10-11 (Tex. Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.
Crim. App. 1996). The standard of review is the same in both direct and circumstantial evidence cases.
Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999). 

 In the early morning hours of May 4, 1998, John Brown and Michael Alvarado were driving
around in a brown Camry. At some point, Brown decided he wanted to speak to three young women,
Monica Clemons, Michelle Farley, and Tishonda Farley, who were driving around in their car. The three
women parked their car in an abandoned parking lot near an H.E.B. grocery store, and Brown drove up
next to their car, where they talked briefly. While in the abandoned parking lot, a small white car that
Brown and Alvarado had seen earlier that evening, drove into the H.E.B. lot. Eventually, Brown,
Alvarado, and the three women also drove to the H.E.B. parking lot. Brown stopped his car about twelve
to fifteen feet away from the white car. Two men, who were standing next to the white car, asked Brown,
who was seated in the Camry's driver's seat, if he wanted to buy some drugs. Alvarado said Brown tried
to "blow off" the two men. Alvarado hit Brown on the leg and said "let's go." Alvarado then saw one of
the men pull out a gun and shoot Brown from a distance of about twelve to fifteen feet. Everyone in the
white car fled the scene. Alvarado moved Brown from the driver's seat to the passenger seat, got into the
driver's seat himself, and drove until he found a police officer at approximately 2:30 a.m. Brown was dead
in the passenger seat.

 Alvarado and the three women described the shooter as about 5'7" to 5'9" in height. Alvarado said
the shooter had a goatee or string beard. Although the three women were driving away from the scene
when the shooting occurred, they described the shooter as having dark skin, about nineteen or twenty years
of age, with a short haircut, and wearing blue jeans and a white sleeveless t-shirt. Michelle said Alvarado
never got out of the Camry before the shooting. Monica said Brown and Alvarado were still seated in the
Camry when she heard a gunshot. Alvarado later identified defendant in a photo array as the person who
shot Brown. Although the three women could not identify defendant in the photo array as the shooter,
Monica chose several pictures from the array, one of which was the defendant's. Monica thought
defendant was in the white car but not the shooter. 

 Brown's autopsy revealed he was killed by a single gunshot that entered the top, left portion of his
back, traveling through his lungs and heart and lodging in his right chest wall. Alvarado tested positive for
gun shot residue ("GSR") on his right hand, but there was no evidence that the shot that killed Brown was
fired within two or three feet of Brown. 

 At trial, defendant offered alibi evidence that he arrived in town at around midnight on May 3, 1998
and drove to his father's house at approximately 2:00 a.m., where he borrowed his father's truck and left
to visit the mother of his children. Defendant's step-sister said he returned to his father's house at about
1:45 or 2:00 a.m. and spent the night.

 After a review of all the evidence, we hold it is not so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Accordingly, we overrule defendant's third issue.

BRADY DISCLOSURE

 In his first issue, defendant asserts the State failed to timely disclose exculpatory evidence in
violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963). At trial, James Garcia, a forensic
scientist in the Bexar County Crime Lab's trace evidence section, testified there were GSR particles on
Alvarado's right hand, which indicated he had either fired a weapon or been in close proximity to a
discharged firearm. It was not until during trial that defense counsel learned Garcia said these conclusions
were modified in 1999 to add a third alternative: that Alvarado had handled a discharged firearm.
Defendant contends reversible harm resulted from this late disclosure because he was unable to make
effective use of the 1999 conclusions.

 Impeachment evidence is considered exculpatory evidence. Ex parte Richardson, 70 S.W.3d
865, 872 (Tex. Crim. App. 2002). Suppression of exculpatory or even favorable evidence to a defendant
violates due process when the evidence is material to either guilt or punishment. Brady, 373 U.S. at 87,
83 S. Ct. at 1196-97. The existence of good faith or bad faith on the State's part is not relevant. Id. To
demonstrate a violation of due process rights, the defendant must show that: (1) the State failed to disclose
evidence, (2) the evidence was favorable to the defendant, and (3) the fact that the evidence was not
disclosed creates a probability sufficient to undermine the confidence in the outcome of the proceeding.
Ex parte Richardson, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). 

 However, even in the face of deliberate concealment by the State or its agents, there is no due
process violation unless the concealed evidence is material, and when examined as part of the entire record,
creates a reasonable doubt concerning the defendant's guilt that would not otherwise exist. Hampton v.
State, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). (1) The mere possibility that undisclosed evidence may
have helped the defense or affected the trial's outcome does not establish "materiality" in the constitutional
sense. Id. Whether the evidence is material is viewed in the context of the overall strength of the State's
case. Id. at 613.

 Here, the parties dispute whether the third alternative offered in 1999 was material; that is, whether
there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have
been different. According to defendant, the 1999 conclusions would have impeached Alvarado's
testimony, thus undermining the State's case.

 During the State's case-in-chief, Garcia testified that based on the GSR particles found on
Alvarado's right hand, in 1998 "we were concluding [in] our reports the subject probably had 'either fired
a weapon or been in close proximity to a discharged firearm.'" Garcia said in 1999 "[w]e . . . modified
the conclusion to read the subject discharged the firearm, handled the discharged firearm, or was in close
proximity to a discharged firearm." Garcia said the report was modified because "we felt that we should
give the majority of the potential reasons for the source of these particles, it would only be brought out in
testimony, of course, we would share that information, but we also felt the investigators or anybody who
would be in need of such analysis should also know the other sources to where that residue may arise
from." Other than these three alternatives, Garcia said a secondary or tertiary transfer also could occur
when an individual touches something on which residue has landed.

 Following the above testimony, the trial court took a twenty minute recess, outside the jury's
presence, during which defense counsel stated he had received a copy of the 1998 GSR analysis, but not
a copy of any modified GSR analysis. When asked if a report actually issued following the 1999
modifications, Garcia replied that only the 1998 report issued and a second report containing modified
findings was not issued. Garcia explained the modification to his report resulted from a policy change within
his office and not from a second GSR analysis. Garcia said only one analysis was performed on the GSR
particles found on Alvarado's hand. Defense counsel asked for additional time to review documents that
would verify this policy change for the purpose of challenging Garcia's credibility. The court instructed the
State to get the documents, but stated trial would resume at the end of the twenty-minute recess. However,
Garcia was recalled the next day because he was unable to obtain the documents from his office and return
to the courthouse on the same day. No further discussion regarding the modification was held.

 During the defendant's case-in-chief, Richard Ernest, a forensic ballistics expert, testified that GSR
particles on an individual's hands would indicate the person has fired a weapon, handled a weapon that has
been discharged, or was in the "firing cloud" of a discharging weapon. Ernest agreed with Garcia's
conclusion that Alvarado's right hand tested positive for GSR, which indicated Alvarado had fired a gun,
touched a gun, or been in close proximity to a firing gun. Ernest's written report stated these same three
results.

 After an examination of the entire record, we conclude the third alternative was not "material."
Defendant has not established that his knowledge of the change in policy at the Bexar County Crime Lab
would have undermined the confidence in the verdict. Defendant does not explain on appeal what
"effective use" he would have made had he known of the policy change in view of the fact that his own
expert arrived at the same three conclusions and testified to such at trial. For these reasons, we overrule
defendant's first issue. 

REMOVAL OF DEFENDANT FROM COURTROOM

 In his fourth issue, defendant asserts the trial court abused its discretion when it removed him from
the courtroom. A defendant's absence from trial will not result in reversal unless there is a showing of
actual injury or a showing of facts from which injury might reasonably be inferred. Mares v. State, 571
S.W.2d 303, 307 (Tex. Crim. App. 1978); see also Carrion v. State, 926 S.W.2d 625, 629 (Tex.
App.--Eastland 1996, pet. ref'd). Also, a defendant's absence when only issues of law are considered,
will not result in reversal unless his presence bears a "reasonably substantial relationship to the opportunity
to defend." Mares, 571 S.W.2d at 307; Guerra v. State, 760 S.W.2d 681, 696 (Tex. App.--Corpus
Christi 1988, pet. ref'd). 

 After the defense rested, the State asked to call San Antonio police officer Larry Ripley to rebut
the testimony of defense witnesses who said defendant was at home the night of the murder. Defense
counsel objected and the court held a hearing outside the jury's presence to consider the defendant's earlier
motion to suppress any statements he made. Outside the jury's presence, Ripley testified he met with
defendant, about one month after the shooting, while defendant was a patient at the Brooks Army Medical
Center ("BAMC") undergoing treatment for a gunshot wound to the abdomen. Ripley said defendant was
not in custody or a suspect in any criminal investigation at the time. He said defendant was lucid and
coherent when they spoke. During the conversation, defendant denied knowledge of the shooting, saying
he was at his father's house at the time. When defendant asked for a lawyer, Ripley discontinued the
conversation.

 After Ripley was excused, defense counsel said he was in a position to obtain BAMC hospital
records and hospital witnesses to prove defendant's statement was not voluntarily given because defendant
was on medication while at BAMC. After further discussion, the court ruled the statement was voluntary,
but allowed defense counsel to bring copies of the medical records from his office to the courthouse. The
court said it would "find somebody" to explain the effect of the drugs defendant was taking while in the
hospital. At 1:25 p.m. the hearing reconvened on the record, in the presence of the State, defense counsel,
and defendant. Defense counsel asked that a bill of exception be made about previous discussions held
off the record about the medical records.

 On the bill of exception, defense counsel testified that when he returned to the courthouse with the
medical records, the court reporter was not present. He said the judge began to review the records and
consulted unknown "medical people" over the telephone about the records. (2) He said he eventually asked
that any further proceeding be on the record, at which point defendant raised his hand and started to object
that he too wanted the proceeding on the record. Defense counsel stated that the judge wanted "an
informal discussion" and ordered defendant removed from the courtroom. Before defendant was removed,
defense counsel objected to the removal. According to defense counsel, the judge said "this was an
informal discussion, didn't need to be on the record and that we should have this discussion." Counsel said
defendant expressed concern about being removed from the courtroom and was "very upset." Counsel
concluded the bill of exception by stating the trial court then ordered both defendant and defense counsel
removed from the courtroom and taken to a holding cell.

 Following this testimony on the bill of exception, the trial court said counsel's recollection of what
transpired was not entirely consistent with its recollection. The court stated, "At no time during the
discussion off the record was any substantive right of the defendant discussed other than whether or not
we need to have the record proved up through getting a custodian of medical records and also getting a
medical person to testify."

 On appeal, defendant does not explain how he was harmed by his absence from the courtroom.
Instead, defendant merely recites he was fundamentally harmed because his absence was in violation of
Texas Code of Criminal Procedure article 33.03, which provides that "the defendant must be personally
present at the trial" of any felony. See Tex. Code Crim. P. art. 33.03 (Vernon 1989). However, because
defendant has not shown that his absence from the courtroom harmed his defense when only a legal issue,
i.e., the admissibility of certain evidence, was under consideration; we overrule his fourth issue.

EXCLUSION OF EVIDENCE

 In his second issue, defendant asserts the trial court erred in excluding evidence that was relevant
to whether his statement to Ripley was voluntary and that would have enabled him to more effectively
cross-examine Ripley.

 We review the admission or exclusion of evidence for an abuse of discretion. Goff v. State, 931
S.W.2d 537, 553 (Tex. Crim. App. 1996). To preserve a complaint that the trial court erroneously
excluded evidence, the complaining party must bring forward a record indicating the nature of the evidence.
See Tex. R. App. P. 33.1, 33.2; Tex. R. Evid. 103(a)(2). If the excluded evidence is not apparent from
the context of the record, it must be brought forward either through a timely offer of proof or a formal bill
of exception. Id.; Guidry v. State, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999), cert. denied, 531 U.S.
837, 121 S. Ct. 98 (2000); Jenkins v. State, 948 S.W.2d 769, 775 (Tex. App.--San Antonio 1997, pet.
ref'd). Absent a showing of what such testimony would have been, or an offer of a statement concerning
what the excluded evidence would show, nothing is presented for review. Guidry, 9 S.W.3d at 153.

 Defense counsel said he wanted a recess "to get the medical records and get someone from
BAMC . . . to come and testify to [defendant's] condition, because that would reflect directly on the
condition of the defendant at the time he made the statements . . . so we wanted to bring in evidence for
the defense to show that his medical condition was such that he was under medication, probably not
thinking clearly." Defendant made no offer of proof regarding what the medical personnel would have said
about the medication defendant was taking, the effect of the medication on defendant, his condition at the
time he spoke with Ripley, and what, if anything, hospital personnel said to Ripley while Ripley was with
defendant. As such, defendant has failed to present anything for our review on appeal; therefore, we
overrule defendant's second issue.

NEW TRIAL HEARING

 At the hearing on defendant's motion for new trial, defendant called to the stand Sean Jones for
the purpose of having Jones testify that he had told Lucas Huckelberry that defendant did not shoot
Brown. At the time of the alleged conversation between Jones and Huckelberry, they were both inmates
at the Bexar County Jail. Before Jones took the stand, his appointed attorney informed the court Jones
intended to invoke his Fifth Amendment right to remain silent. Indeed, rather than answer any question put
to him by defense counsel, Jones responded, "I take the 5th." Defense counsel then called Huckelberry
to the stand. Huckelberry testified he and Jones were watching a television news report about defendant's
trial. When counsel asked Huckelberry what Jones said, the State objected on hearsay grounds. Defense
counsel countered that because Jones made himself unavailable by asserting his right to remain silent, his
statement to Huckelberry was admissible under Texas Rule of Evidence 803(24) as a statement against
penal interest. The court, after hearing Huckelberry's testimony on voir dire and arguments of counsel,
concluded the statement was not against Jones's penal interest; therefore, Huckelberry could not testify to
what Jones told him.

 On appeal, defendant contends the trial court erred by allowing Jones to assert a Fifth Amendment
right and in ruling that Jones's statement was inadmissible hearsay. Defendant contends that Jones's
statement was against his penal interest because it would have implicated him in a planned car-jacking.
Defendant argues it was inconsistent of the trial court to allow Jones to assert a Fifth Amendment privilege
on the one hand but then rule his statement was not against his penal interest. While defendant's argument
has merit, we conclude the trial court did not abuse its discretion in denying defendant's motion for a new
trial based on newly discovered evidence.

 A motion for new trial may be filed upon the discovery of new and material evidence. Tex. Code
Crim. Proc. Ann. art. 40.001 (Vernon Supp. 2003). The decision to grant or deny a motion for new trial
is left to the sound discretion of the trial court and in the absence of an abuse of discretion an appellate
court should not reverse. Keeter v. State, 74 S.W.3d 31, 37 (Tex. Crim. App. 2002); Lewis v. State,
911 S.W.2d 1, 7 (Tex. Crim. App. 1995); Eddlemon v. State, 591 S.W.2d 847, 849 (Tex. Crim. App.
1979). Additionally, motions for new trial based on newly discovered evidence are not favored by the
courts and are viewed with great caution. Drew v. State, 743 S.W.2d 207, 225 (Tex. Crim. App. 1987).

 A trial court does not abuse its discretion in denying a new trial unless the record shows (1) the
newly discovered evidence was unknown or unavailable to the movant at time of trial; (2) the movant's
failure to discover or obtain the evidence was not due to lack of diligence; (3) the new evidence is
admissible and is not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence
is probably true and will probably bring about a different result on another trial. Wallace v. State, 106
S.W.3d 103, 108 (Tex. Crim. App. 2003); Eddlemon, 591 S.W.2d at 849. Failure to establish any of
the essential requirements warrants a refusal to grant a new trial. Markham v. State, 644 S.W.2d 53, 55
(Tex. App.--San Antonio 1982, no pet.). Here, the State does not dispute whether defendant met the first
three prongs of this test. Instead, the State argues the newly discovered evidence would not have led to
a different result at trial.

 The Court of Criminal Appeals has explained the fourth prong as follows:

 [S]hould it appear to the trial court that under the circumstances of the particular
case the credibility or weight of the new evidence is not such as would probably bring
about a different result upon a new trial, it is within its discretion to deny the motion. Thus
it has been said that the new evidence must be "probably true." And although exceptions
may be found, as a rule new evidence which is merely cumulative, corroborative, collateral
or impeaching will rarely be judged by trial or appellate courts to be of such weight as
likely to bring about a different result. 


 Jones v. State, 711 S.W.2d 35, 37 (Tex. Crim. App. 1986). In other words, the trial court can find the
new evidence is probably not true when it contradicts either the mass of reliable testimony at trial or the
defendant's own testimony, or the new testimony is inconsistent or otherwise inherently suspect.
Henderson v. State, 82 S.W.3d 750, 755 (Tex. App.--Corpus Christi 2002, pet. ref'd). When the truth
of newly discovered evidence is contested, the credibility of witnesses and the probable truth of the new
evidence are matters to be determined by the trial court. Keeter, 74 S.W.3d at 37.

 Before ruling that Huckelberry's testimony was inadmissible hearsay, the trial court allowed defense
counsel to question him about his conversation with Jones. On voir dire, Huckelberry said Jones told him
that Jones, Jones's girlfriend, and another male friend drove up next to the Camry in the H.E.B. parking
lot, and Jones's friend "hopped out of the car with the pistol and blasted . . . Brown, one time in the head."
Huckelberry said Jones told him he saw "an Asian guy jump out of [Brown's] car and run behind the
H.E.B. He knew the Asian guy to be named Pompay." Huckelberry said Jones did not identify his friend
by name. The trial court also considered Huckelberry's affidavit and a letter Huckelberry sent to
defendant, both of which were consistent with his testimony at the hearing. At the conclusion of the hearing,
the court found Huckelberry to be credible in his testimony that he heard Jones say something with respect
to defendant's case. However, the court expressed doubt over the credibility of Jones's alleged statements
regarding who shot Brown. (3)

 A trial court acts within its discretion so long as the record provides some basis for disbelieving the
testimony. Keeter, 74 S.W.3d at 38. The vague reference to Jones's friend as the shooter is contradicted
by Alvarado identifying defendant as the assailant. Allegedly, Jones saw an Asian male exit Brown's car
after the shooting. Alvarado and the three young women testified that only Brown and Alvarado were in
Brown's car. The forensic evidence established Brown was shot in the back, not the head, and from a
distance of at least twelve feet and not at close range. Based upon the authority of the trial court to judge
the credibility of the witnesses and the weight to be given their testimony, we conclude the court may have
properly found the new evidence defendant presented as a basis for his motion for new trial was probably
not true. Accordingly, we hold the trial court did not abuse its discretion by denying defendant's motion
for new trial, and we overrule defendant's fifth issue on appeal.


 


CONCLUSION

 We overrule defendant's issues on appeal and affirm the trial court's judgment.


 Sandee Bryan Marion, Justice

PUBLISH


 


1. In comparing reversible error under Brady and Texas Rule of Appellate Procedure 44.2(a), the Hampton Court
noted that, "[a]lthough reversible error under Brady will always constitute reversible error under Rule 44.2(a), the
converse is not true." Hampton v. State, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). The Court held, "The three-pronged
test for reversible error for a Brady violation is entirely different from the constitutional harmless error standard set out
in Tex. R. APP. P. 44.2(a)." Id.
2. Although on appeal defendant does not complain about this telephone conversation, we do not condone
the trial court's off-the-record telephone conversation with "medical people." See Erskine v. Baker, 22 S.W.3d 537, 539-40 (Tex. App.--El Paso 2000, pet. denied) (considering ex parte communications to be error).
3. The court stated, "I have a problem with the language in the letter and the language in the affidavit, as to not
believe that there is a bolstering effect here."