Gilbert DAVILA & Juan Jose
Davila, Appellants,

v.

The STATE of Texas, Appellee.

Nos. 13–03–483–CR, 13–03–502–CR.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Aug. 26, 2004.

Rehearing Overruled Oct. 21, 2004.

Patricia G. Deaton, Sinton, S. Reese Rozzell, Rockport, for appellants.

Patrick L. Flanigan, District Attorney, Michael Hess, Assistant District Attorney, Sinton, for appellee.

Before Justices HINOJOSA, CASTILLO, and BAIRD.[1]

## MEMORANDUM OPINION

Opinion by Justice BAIRD (Assigned).

Appellants were charged by indictment with the offense of capital murder. The State did not seek the death penalty. Appellants were tried jointly and convicted by a jury of the charged offense. The trial judge automatically assessed punishment at confinement for life in the Texas Department of Criminal Justice—Institutional Division. We affirm.

### I. Sufficiency Challenges.

Each appellant challenges the legal and factual sufficiency to support their respective convictions. We will begin with a

---

1. Former Court of Criminal Appeals Judge Charles F. Baird assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003 (Vernon Supp. 2004).

summary of the evidence adduced at trial, determine the appropriate standards of appellate review, and analyze each point of error.

## A. Factual Summary.

The appellants, Gilbert and Juan Davila, are brothers. On October 12, 2002, the appellants and several friends gathered for a birthday party. At some point during the evening, a fight broke out between Joe Rendon and George Garcia. Enrique Rendon and Gilbert broke up the fight. The next morning Garcia and his girlfriend, Bernice Alvarez, were found dead along the roadside.[2]

Much of the trial testimony was impeached with prior inconsistent statements. The State's theory of prosecution was that appellants left the location of the party with Garcia and Alvarez in the front seat of Gilbert's vehicle. Appellants returned a short time later, admitted to killing the complainants, bathed, burned their clothes, and altered the interior of the vehicle to remove evidence of the crime. Appellants testified they had nothing to do with the murders. The jury accepted the State's theory of prosecution, rejected the defensive theory, and convicted each appellant of capital murder. The evidence will be developed more fully later in this opinion.

## B. Standards of Appellate Review.

Appellants raise two points of error contending the evidence is legally and factually insufficient to support their convictions. Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The appellate standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id.* at 320. The evidence is examined in the light most favorable to the fact-finder. *Id.* Sufficiency of the evidence is measured by the hypothetically correct jury charge, which accurately sets out the law, is authorized by the indictment, and does not unnecessarily increase the State's burden of proof. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997); *Cano v. State*, 3 S.W.3d 99, 105 (Tex.App.-Corpus Christi 1999, pet. ref'd). A successful legal sufficiency challenge will result in the rendition of an acquittal by the reviewing court. *Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

We employ a different standard of appellate review when determining whether the evidence is factually sufficient to support the verdict. First, we assume the evidence is legally sufficient under the *Jackson* standard. *Clewis v. State*, 922 S.W.2d 126, 134 (Tex.Crim.App.1996). We then consider all of the record evidence, not just the evidence which supports the verdict. *Id.* We review the evidence weighed by the jury which tends to prove the existence of the fact in dispute, and compare it to the evidence which tends to disprove that fact. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App.1997). We may disagree with the jury's determination, even if probative evidence exists which supports the verdict. *Clewis*, 922 S.W.2d at 133. However, our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Santellan*, 939 S.W.2d at 164. We set aside

**2.** It is the author's policy not to refer to complainants by name. However, because of the factual circumstances of this case, that policy cannot be followed. *First v. State*, 846 S.W.2d 836, 838 n. 2 (Tex.Crim.App.1992).

the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000) (quoting *Clewis,* 922 S.W.2d at 129). This occurs when "the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Id.* at 11.

### C. Analysis.

■ Appellants' challenges are limited to whether the evidence is legally and factually sufficient to prove they were the ones who caused the deaths of the complainants. We first turn to the evidence supporting the jury's verdict in Gilbert's case. Gilbert admitted killing the complainants to three individuals: Clarissa Hernandez, Joe Rendon, and Enrique Rendon. Additionally, Gilbert asked Alex Rendon and April Denny to lie to law enforcement officers to impede their investigation. Furthermore, there is evidence from multiple sources that Gilbert altered the interior of his vehicle. The deduction from this testimony is that the alterations were done to hide evidence of the murders which took place in the front seat of the vehicle.

■ Gilbert argues the evidence is insufficient because the testimony of the State's witnesses is not credible because it was impeached with prior statements and was otherwise contradicted. In making this argument, Gilbert candidly admits that contradictory testimony from a witness does not render the evidence insufficient. *Mercado v. State,* 695 S.W.2d 25, 29 (Tex.App.-Corpus Christi 1985), *aff'd,* 718 S.W.2d 291 (Tex.Crim.App.1986). The jury was the exclusive judge of the facts proved and of the weight to be given to the testimony. TEX.CODE CRIM. PROC. ANN. art.

38.04 (Vernon 1979). Therefore, the jurors were free to accept or reject any or all testimony of these witnesses' testimony. *Alvarado v. State,* 818 S.W.2d 100, 105 (Tex.App.-San Antonio 1991, no pet.). In convicting Gilbert, the jury obviously chose to accept the aforementioned testimony and rejected the testimony of appellants. When we review the State's evidence in the light most favorable to the jury's verdict, we find the evidence was sufficient for a rational jury to have found the essential elements of the offense beyond a reasonable doubt. *Jackson,* 443 U.S. at 320, 99 S.Ct. 2781. Consequently, we hold the evidence is legally sufficient to support the jury's verdict. Gilbert's first point of error is overruled.

We now turn to the factual sufficiency challenge, and view the evidence in a neutral light to determine if the verdict is against the great weight and preponderance of the available evidence. *Johnson,* 23 S.W.3d at 11. As noted above, our evaluation of this evidence in this light should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of the testimony. *Santellan,* 939 S.W.2d at 164. When the State's evidence is considered in a neutral light, we cannot say that the jury's verdict was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson,* 23 S.W.3d at 7. Nor can we say the jury's verdict either "shocks the conscience," or "clearly demonstrates bias." *Santellan,* 939 S.W.2d at 164. Accordingly, we hold the evidence is factually sufficient. Gilbert's second point of error is overruled.

We now turn to Juan's legal sufficiency challenge. According to the testimony of Joe Rendon, Juan admitted shooting Garcia once, and Alvarez twice—"[o]ne went all the way through her into the dashboard. That's why he shot the second

time."[3] This testimony is corroborated by Dr. Ray Fernandez of the Nueces County Medical Examiner's Office. Fernandez testified that Garcia died as a result of a single gunshot wound to the head. Alvarez died as a result of two gunshot wounds to the head. One wound was described as a "perforating gunshot wound" which means the projectile "went in and out, through and through the body." When this evidence is viewed in the light most favorable to the prosecution, we find the State's evidence was sufficient for a rational jury to have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 320, 99 S.Ct. 2781. Consequently, we hold the evidence is legally sufficient to support the jury's verdict. Juan's third point of error is overruled.

Similarly, we hold the evidence is factually sufficient. In other words, the jury's verdict in Juan's case was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson*, 23 S.W.3d at 7. Neither does the verdict shock the conscience or "clearly demonstrate bias." *Santellan*, 939 S.W.2d at 164. Accordingly, Juan's second point of error is overruled.

## II. Newly Discovered Evidence and Actual Innocence.

Juan's first and fourth points of error deal with the evidence developed at the hearing on his motion for new trial. After appellants' trial, Gilbert wrote a letter to Juan. The letter described Gilbert riding in his car with the complainants in the front seat. However, Enrique and Joe Rendon, not Juan, were in the back seat. During the ride, Garcia and Enrique re-newed the earlier argument, and Enrique shot and killed both Garcia and Alvarez. Gilbert testified he never told anyone, except his attorney, this version of the events. The letter was introduced into evidence. Gilbert admitted that his testimony at trial was not truthful, and that he asked other witnesses, including Juan, to testify falsely during the trial.

Juan also testified at the motion for new trial hearing, and admitted his testimony that Gilbert's vehicle had not been modified was false. He further stated that he did not receive Gilbert's letter until after their trial. Juan had asked Gilbert on several occasions for information about the murders, but Gilbert did not say anything other than "Enrique had f----- up." On cross-examination, Juan conceded that Gilbert's remark was made in connection with the murders. Juan did not tell his attorney about this remark. Juan testified he first learned of how the murders were actually committed and who was involved in altering the vehicle when he received Gilbert's letter.

In response to this testimony, the State offered the affidavit of Gilbert's trial attorney, who stated Gilbert revealed his new version of the murders during a conference after appellants rested their case and before the start of the State's rebuttal. Counsel stated: "To me, this new story was highly implausible, because it was not likely, after the fight between Garcia and Enrique Rendon's brother, and the mean words exchanged in that fight, that Garcia would consent to entering a car driven by or occupied by any Rendon. I felt that [Gilbert] was grasping for some way out for his brother." The trial judge subsequently denied the motion for new trial.

---

**3.** Rendon testified he was told the following by Juan: Garcia said to Juan: "Someone is going to die for this." Juan responded by saying, "You are," and shooting Garcia. Juan then shot Alvarez, and the bullet went through her eye into the dashboard. Juan had to shoot her again because the first shot did not kill her.

## A. Newly Discovered Evidence.

 The first point of error contends Gilbert's letter to Juan constituted newly discovered evidence which required the granting of a new trial. A trial court has discretion to decide whether to grant a new trial based upon newly discovered evidence, and its ruling will not be reversed absent an abuse of discretion. *Keeter v. State*, 74 S.W.3d 31, 37 (Tex.Crim.App. 2002); *Henderson v. State*, 82 S.W.3d 750, 754–55 (Tex.App.-Corpus Christi 2002, no pet.); *Monse v. State*, 990 S.W.2d 315, 317 (Tex.App.-Corpus Christi 1999, pet. ref'd). The Texas Code of Criminal Procedure provides that a new trial shall be granted where material evidence favorable to the accused has been discovered since trial. TEX.CODE CRIM. PROC. ANN. art. 40.001 (Vernon Supp.2004); *Keeter*, 74 S.W.3d at 36. To establish an abuse of discretion, Juan must show: (1) the evidence was unknown to him before trial; (2) his failure to discover the evidence was not due to his want of diligence; (3) it is probably true and its materiality will probably bring about a different result upon a new trial; and (4) it is competent, not merely cumulative, corroborative, collateral, or impeaching. *Keeter*, 74 S.W.3d at 36–37.

 In the instant case, assuming *arguendo* that the first and second prongs have been met, we turn to the third prong. The "probably true" requirement means the trial court must determine that the whole record presents no good cause to doubt the credibility of the witness whose testimony constitutes new evidence, either by reason of the facts proven at the trial or by the controverting affidavits on the motion, or otherwise. *Id.* at 38; *Jones v. State*, 711 S.W.2d 35, 37 n. 4 (Tex.Crim. App.1986); *Henderson*, 82 S.W.3d at 755. Stated another way, the trial court can find the new evidence is probably not true when it contradicts either the mass of reliable testimony at trial or the defendant's own testimony, or the new testimony is inconsistent or otherwise inherently suspect. *Henderson*, 82 S.W.3d at 755.

To have granted the motion for new trial, the trial judge would have had to believe Gilbert's testimony at that hearing. However, at that hearing, Gilbert admitted that he had lied when testifying at the trial, and had instructed others to lie. Additionally, at the hearing, Juan admitted that a portion of his trial testimony was false. The testimony of both Gilbert and Juan at the motion for new trial hearing contradicts their own trial testimony, and their admitted perjury makes the motion for new trial testimony inherently suspect. Based on Gilbert's admitted perjury, the trial judge certainly had cause to doubt Gilbert's credibility—the witness whose testimony constitutes new evidence—and was within his discretion to determine that the "new" evidence probably was not true; therefore, the third *Keeter* prong is not satisfied. Juan's first point of error is overruled.

## B. Actual Innocence.

 Juan's fourth and final point of error raises an actual innocence claim. Claims of actual innocence are categorized as either *Herrera*-type claims or *Schlup*-type claims. *See generally Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). A *Herrera*-type claim involves a substantive claim in which the applicant asserts his bare innocence based solely on newly discovered evidence. *Ex parte Franklin*, 72 S.W.3d 671, 675 (Tex.Crim.App.2002). A *Schlup*-type claim is a procedural claim in which the applicant's claim of innocence does not provide a basis for relief, but is tied to a showing of constitutional error at trial. *Id.*

Juan urges a *Herrera* claim. A conviction that results from a constitutionally error-free trial is entitled to the greatest respect. *Id.* at 677–78. Therefore, a defendant asserting a *Herrera*-type claim based on newly discovered evidence must show by clear and convincing evidence that no reasonable fact finder would have convicted him in light of the newly discovered evidence. *Id.* at 677; *Ex parte Elizondo,* 947 S.W.2d 202, 209 (Tex.Crim.App.1996). The trial judge's job is not to review the fact finder's verdict, but to decide whether the newly discovered evidence would have convinced the fact finder of the defendant's innocence. *Elizondo,* 947 S.W.2d at 209; *State v. Nkwocha,* 31 S.W.3d 817, 820 (Tex. App.-Dallas 2000, no pet.).

In the instant case, Juan presented Gilbert's testimony and his own. Both admitted to testifying falsely under oath at their trial. Therefore, the trial judge was free to find that Gilbert's new version of the murders did not constitute clear and convincing evidence sufficient that no reasonable juror would have convicted Juan. This conclusion is further justified in light of Joe Rendon's testimony that Juan admitted shooting the complainants. Accordingly, we hold Juan has not established his actual innocence. Accordingly, Juan's fourth point of error is overruled.

The judgment of the trial court in each case is affirmed.