

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|                      | § |                          |
|----------------------|---|--------------------------|
| JESUS SOLIS,         | § | No. 08-17-00007-CR       |
|                      | § |                          |
| Appellant,           | § | Appeal from              |
|                      | § |                          |
| v.                   | § | 120th District Court     |
|                      | § |                          |
| THE STATE OF TEXAS,  | § | of El Paso County, Texas |
|                      | § |                          |
| Appellee.            | § | (TC # 20130D02293)       |
|                      | § |                          |

**O P I N I O N**

In a three-count indictment, Appellant was charged with commission of the offenses of continuous sexual abuse of young children (Count I), sexual assault of a child, S.G. (Count II), and indecency with a child, S.G (Count III).   A jury acquitted Appellant of the offense of continuous sexual abuse of young children, but convicted him of the offenses of sexual assault of a child and indecency with a child.   The trial court imposed the jury's sentences of confinement for ten and seven years, respectively, and assessed fines of $10,000.00 each for Counts II and III.

Appellant thereafter filed a motion for new trial claiming he was entitled to a new hearing based on newly available exculpatory evidence.   After hearing evidence and argument, the trial court denied Appellant's motion.   On appeal, Appellant argues the trial court abused its discretion in denying his motion for new trial.

# BACKGROUND

Appellant was married to Christina Gonzalez, and was stepfather to Christina's young daughters, S.G., J.G., A.G., and Alondra. After S.G., J.G., and A.G. made outcries against Appellant for abusing them sexually, police reports were prepared and Appellant was charged as alleged in the indictment.

Count II of the indictment alleged that Appellant intentionally and knowingly caused the penetration of the sexual organ of S.G., a child younger than 17 years of age, by means of Appellant's sexual organ. Count III alleged that Appellant, with the intent to arouse and gratify his sexual desire, intentionally or knowingly engaged in sexual contact with S.G., a child younger than 17 years of age and not Appellant's spouse, by touching any part of S.G.'s genitals.

In addition to other witnesses, sisters S.G., J.G., A.G., their mother, grandmother, and aunt, and Appellant and his mother and father testified at trial. The sisters testified that for several years they had experienced or witnessed physical and sexual abuse by Appellant at home and during trips when they were required to travel alone with Appellant in his semi-truck.[1] There was evidence that the sisters recanted their reports of abuse at the direction of their mother, Christina, who did not believe, acknowledge, or act on the girls' reports of sexual abuse in spite of the girls' testimony that Christina had actually observed Appellant's sexual abuse. Christina's daughter Alondra did not present testimony during trial. Christina's sister, Araceli, testified that she had seen one of the daughters leave unhappily with a suitcase to travel alone with Appellant in his semi-truck.

Christina denied that her daughters had traveled alone with Appellant. She asserted that

---

[1] The abuse also occurred on "family" trips.

that her daughters' accusations were lies, and she had chosen to leave her daughters in the care of the state after they had been removed from their home, which she continued to share with Appellant. Appellant testified and denied that he sexually or physically assaulted the girls and asserted that he never traveled alone with them.

*Motion for New Trial*

After he was convicted of committing the offenses against S.G., Appellant filed a motion seeking a new trial on the basis that "material and critical exculpatory evidence, heretofore unavailable to the defense, has been obtained by the defense subsequent to the defendant's conviction and sentence," and argued that the motion should be granted "in the interest of justice." Appellant asserted that S.G.'s older sister, Alondra, had been present during all events the State relied on at trial to prove the allegations in the indictment and to prove extraneous offenses of physical abuse against S.G. and her sisters, but had refused to cooperate or to testify for Appellant because she did not want to be involved, and had exhibited a hostile, non-cooperative attitude toward Appellant. He noted that during the period immediately prior to trial, Alondra had been confined in an out-of-state jail on unrelated criminal charges, where she remained until after Appellant's trial. For these reasons, Appellant claims Alondra was unavailable to testify favorably in his defense at trial.

Appellant presented Alondra's affidavit in support of his motion for new trial. Appellant argued that "[b]ecause of the [s]trong exculpatory nature of the evidence now offered by Alondra . . ., [the trial court] should grant a new trial in the interest of justice, if not for other reasons." Appellant does not explain how or why Alondra's statements in her affidavit would entitle him to a new trial.

3

Succinctly stated, Alondra's affidavit alleged that Appellant never sexually abused her, and to her knowledge, Appellant never sexually abused S.G. Alondra noted that neither she nor her sisters ever traveled alone with Appellant, and when Alondra traveled on business trips with Appellant, Christina was present. Alondra acknowledged that she had made allegations of sexual abuse against Appellant that were inspired by her sisters' comments about sexual abuse but were not true. She also denied that Appellant or Christina ever physically abused her. When Alondra was 13 or 14 years old, S.G. discussed allegations of sexual abuse by Appellant with Alondra while at their Aunt Araceli's home. Alondra believed S.G. had made allegations against Appellant "as a plan to get him locked up for a long time," and had done so at the suggestion of their aunt who did not like Appellant and had engaged in many private conversations with S.G. Alondra acknowledged that she had no street address because she was "in and out of jail," and had refused to cooperate and did not want to be involved in Appellant's trial. After Appellant's trial, Alondra decided to testify for Appellant because she believes that he is innocent of the charges. Alondra expressed her belief that sisters were encouraged by their aunt, and grandmother and grandfather to make the accusations.

*Hearing on Motion for New Trial*

At Appellant's hearing on the motion for new trial, Alondra testified that she had bonded out of jail on November 1, 2016, the day following Appellant's sentencing.[2] She declared that Appellant had never sexually abuse her, and stated that she knew Appellant did not abuse her sisters because she "was there in the house the whole time." Alondra had not testified on behalf of Appellant during his trial because she loves her family, and felt her sisters' allegations were

---

[2] The guilt-innocence phase of Appellant's trial concluded on October 27, 2016, and the punishment phase concluded on October 31, 2016.

4

extreme. She did not want to be a part of the trial or to be required to choose sides. For these reasons, Alondra had refused to cooperate with "the defense" at trial.

Alondra's testimony essentially mirrored that of her affidavit. However, when asked why S.G. would have fabricated her allegations of sexual abuse, Alondra replied that she did not know. Alondra suggested, however, that S.G. had been mad that Appellant could not afford to take her to California to participate in acting classes, and noted that S.G. had made recordings of herself singing and had posted them on YouTube. Alondra explained that S.G. was "really, like, big with her little fan people that she had[,]" and that an agent who was going to attempt to book S.G. on a few shows. When this did not occur, S.G. would cry and tell Appellant, "You don't care about my dreams."

On cross-examination, Alondra acknowledged that after Appellant had been charged and child protective services had opened its case, she had also accused Appellant of sexually abusing her. She claimed that the stories her sisters told were planned before they were interviewed, and said that some accusations were retracted. Alondra acknowledged that she did not remember whether this was before or after she went to live with her grandfather, because she had moved out of the city and had run away, and she didn't want to say anything because she "wasn't really there the whole time that all this happened." Alondra again admitted that she had made several allegations of sexual abuse against Appellant and but had recanted those allegations. She admitted that she was close to Appellant's mother, Mrs. Solis, but later indicated that she had only recently begun speaking with Mrs. Solis and denied that she had received financial support from her.

At the close of the hearing, the trial court determined that Alondra's testimony was no

different than the testimony heard at trial because there was testimony about accusations and recantations. The trial court also noted that there was nothing that Alondra's testimony would have added other than her assertion that the sexual abuse did not occur, and hers would simply be another voice, along with the testimony of Appellant and Christina, that the sexual abuse did not occur. After noting that the jury did not convict Appellant of all of the charges brought against him and had weighed the evidence and the credibility of the witnesses, the trial court concluded that Alondra's testimony did not form the basis for granting a new trial and denied the motion.

## DISCUSSION

### *Preservation*

In a single issue, Appellant argues the trial court abused its discretion in denying his motion for new trial. We first address Appellant's assertion that the State should have provided him notice that Alondra had recanted her sexual abuse allegations. To preserve a complaint for review on appeal, the record must show that the complaint was made to the trial court by a timely request, objection, or motion and the trial court ruled thereon, or refused to rule thereon and the complaining party objected to the trial court's refusal to rule. TEX.R.APP.P. 33.1(a). Appellant did not raise his notice complaint in his motion for new trial or during the hearing on his motion. Therefore, this complaint is not preserved for our consideration.[3]

### *Relevant Law and Standard of Review*

An accused shall be granted a new trial where material evidence favorable to the accused has been discovered since trial. TEX.CODE CRIM.PROC.ANN. art. 40.001. An accused seeking a new trial must satisfy a four-part test establishing that: (1) the newly discovered evidence was

---

[3] We additionally note that Appellant does not direct us to cases, statutes, or rules, nor advances any argument in support of this assertion. *See* TEX.R.APP.P. 38.1(i).

unknown or unavailable to the movant at the time of his trial; (2) the movant's failure to discover or obtain the evidence was not due to a lack of diligence; (3) the new evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching; and, (4) the new evidence is probably true and will probably bring about a different result in another trial. *Keeter v. State*, 74 S.W.3d 31, 36-37 (Tex.Crim.App. 2002).

We review a trial court's denial of a motion for new trial for an abuse of discretion and reverse the trial court's denial only if no reasonable view of the record could support the trial court's ruling. *Burch v. State*, 541 S.W.3d 816, 820 (Tex.Crim.App. 2017); *State v. Gutierrez*, 541 S.W.3d 91, 98 (Tex.Crim.App. 2017). This deferential standard requires that we view the evidence in the light most favorable to the trial court's ruling. *Burch*, 541 S.W.3d at 820. In making our determination, we must not substitute our judgment for that of the trial court, and we must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* When there are two reasonable views of the evidence, the trial court's ruling falls within the zone of reasonable disagreement. *Id.*

The credibility of the witnesses presented in a motion for new trial and the probable truth of the new evidence are matters to be determined by the trial court. *See Etter v. State,* 679 S.W.2d 511, 515 (Tex.Crim.App. 1984). Should it appear to the trial court that, under the circumstances of the case, the weight or credibility of the new evidence is not such that it would probably bring about a different result in a new trial, it is within the discretion of the trial court to deny the motion. *Jones v. State,* 711 S.W.2d 35, 37 (Tex.Crim.App. 1986).

When the court does not issue findings of fact, we imply the findings necessary to support the ruling if they are reasonable and supported by the record. *Gutierrez*, 541 S.W.3d at 98, *citing*

*Johnson v. State*, 169 S.W.3d 223, 239 (Tex.Crim App. 2005). Appellant's failure to establish any of the essential requirements for granting a new trial warrants the trial court's refusal to grant one. *Collins v. State*, 548 S.W.2d 368, 380 (Tex.Crim.App. 1976).

*Analysis*

The record shows that multiple individuals had contact with Alondra or knew her whereabouts prior to trial. At the outset of trial, Appellant's counsel acknowledged to the trial court that he knew that Alondra was in custody in New Mexico. Christina testified that she had a good relationship and had recently spoken with Alondra, and she lamented that Alondra was not present at trial to testify and tell jurors "the truth." According to Christina, Alondra had asked for Christina's forgiveness "for everything [Alondra had] said."

Appellant's mother, Graciela Solis, first testified that she had not been helping Alondra financially, but later acknowledged that she had put some money in Alondra's account about one month or so before trial. Mrs. Solis urged that she had not paid Alondra money to testify, to not testify, or "in exchange [of] anything," and declared that Alondra wanted to testify. Mrs. Solis wished that Alondra had been able to testify. In his motion for new trial, Appellant asserted that Alondra had refused to cooperate or testify, and did not want to be involved in the proceedings, but acknowledged an awareness that she was confined in New Mexico prior to trial. At the hearing on the motion for new trial, Appellant's counsel informed the trial court that he did not have Alondra's street address but had learned that she was confined in New Mexico before trial and suggested to the trial court that securing her presence by "out-of-state writ" before trial would have taken up to a year.[4] During the hearing, Alondra acknowledged that Defense counsel had

---

[4] In his motion for new trial and at the hearing on the motion, Appellant did not address Articles 24.28 or 24.29, by which Texas adopted, respectively, the Uniform Act to Secure the Attendance of Witnesses from Without the State in

seen her several times but had not spoken to her. There is some evidence that Appellant or defense counsel or other witnesses had knowledge of what Alondra's testimony would be, that it would have been favorable to Appellant, and that they knew this, along with her whereabouts, prior to trial. Consequently, Appellant has not satisfied the first-prong requirement of establishing that Alondra's testimony was newly discovered evidence that was unknown to him at the time of his trial. *Keeter*, 74 S.W.3d at 36-37.

Moreover, the record supports a finding that Appellant did not exercise reasonable diligence in attempting to discover or obtain Alondra's favorable testimony. *Id.* At trial, Appellant called as witnesses both his wife Christina, who had recently spoken with Alondra, and his mother, who had put money in Alondra's account weeks before trial. Through the testimonies of these witnesses, there were indications that Alondra was cooperative and that her testimony about "the truth" would have favored Appellant's defense. As we have noted, the law provides mechanisms for securing the attendance of witnesses who are either out of state or are confined. *See* TEX.CODE CRIM.PROC.ANN. arts. 24.28 and 24.29. The record does not reflect that Appellant sought a continuance, the issuance of a subpoena or writ, or that he otherwise attempted to secure Alondra's attendance as a witness. On this record, Appellant failed to establish the second prong for securing a new trial because he could have discovered or obtained Alondra's testimony with the exercise of reasonable diligence but failed to do so. *Keeter*, 74 S.W.3d at 36-37; *see also Acosta v. State*, 285 S.W.2d 764, 765 (Tex.Crim.App. 1955)(Appellant who knew of defense witness at trial but did not seek continuance to locate and secure attendance of the witness at trial

Criminal Proceedings and the Uniform Act to Secure Rendition of Prisoners in Criminal Proceedings. *See* TEX.CODE CRIM.PROC.ANN. arts. 24.28 and 24.29. We do not examine whether either provision was or was not available to Appellant in securing Alondra's testimony at trial.

9

failed to show required due diligence necessary for new trial); *Markham v. State*, 644 S.W.2d 53, 56 (Tex.App.--San Antonio 1982, no pet.)(Appellant did not exercise reasonable diligence to discover or obtain evidence where two months before trial, witness told Appellant's mother that he had committed the offense).

As the trial court noted, Alondra's testimony would have been cumulative and corroborative of other evidence at trial. Although Alondra would have testified that Appellant did not physically or sexually abuse her, did not abuse her sisters, that the sisters did not travel alone with Appellant, and that when she traveled with Appellant, Christina accompanied her, this same evidence was presented at trial through Christina and Appellant. Consequently, because Appellant has not established that Alondra's testimony would have been admissible and not merely cumulative, corroborative, collateral, or impeaching, he has failed to establish the third prong as required. *Keeter*, 74 S.W.3d at 36-37; *see also Wilson v. State*, 633 S.W.2d 952, 958 (Tex.App.--El Paso 1982, no pet.)(where testimony of "new evidence" witness presented the same evidence to which Appellant testified at trial, such evidence was cumulative and corroborative).

In order to find evidence "probably true" as required by the fourth prong, a trial court must determine that the whole record presents no good cause to doubt the credibility of the witness whose testimony constitutes new evidence, either by reason of the facts proven at the trial or by the controverting affidavits on the motion or otherwise. *Henderson v. State,* 82 S.W.3d 750, 755 (Tex.App.--Corpus Christi 2002, pet. ref'd), *citing Jones v. State*, 711 S.W.2d 35, 37 n.4 (Tex.Crim.App. 1986). However, a finding that new evidence is probably not true can be made when that evidence contradicts either the mass of reliable testimony at trial or the defendant's own testimony, or the new testimony is inconsistent or otherwise inherently suspect. *Id., citing Jones,*

10

711 S.W.2d at 37 n.4.

Here, not only did Alondra give inconsistent testimony during the hearing, some of that testimony was also inconsistent with the testimony she presented in her supporting affidavit. During the hearing on the motion for new trial, Alondra testified that she had been close to Mrs. Solis since they first met when Christina began dating Appellant, but Alondra later denied receiving any financial assistance from Mrs. Solis and declared that she had only recently begun to speak with Mrs. Solis. Alondra also testified at the hearing that S.G. had falsely accused Appellant because S.G. was disappointed that he did not assist her in pursuing an acting or musical career. However, in her affidavit, Alondra said S.G. had been convinced by her aunt to lodge sexual abuse allegations against Appellant. These inconsistencies were sufficient to show that Appellant had failed to satisfy the fourth-prong requirement of establishing that Alondra was a credible witness, and that her testimony was probably true and would probably bring about a different result following another trial. *Keeter*, 74 S.W.3d at 36-37. Under the circumstances of this case, because the weight or credibility of the new evidence is not such that it would probably bring about a different result in a new trial, it was within the trial court's discretion to deny Appellant's motion for new trial. *See Jones,* 711 S.W.2d at 37.

A reasonable view of the record supports the trial court's ruling denying the motion for new trial, and the trial court's implicit factual findings are both reasonable and supported in the record. For these reasons, and because Appellant failed to establish the four requirements for obtaining a new trial, the trial court did not abuse its discretion. Appellant's sole issue on appeal is overruled.

11

**CONCLUSION**

The trial court's judgment is affirmed.


December 19, 2018

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)