NUMBER 13-09-416-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS


 

CORPUS CHRISTI - EDINBURG 


 


MICHAEL PEREIDA, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 214th District Court 

of Nueces County, Texas.

 


MEMORANDUM OPINION


Before Justices Rodriguez, Benavides, and Vela


Memorandum Opinion by Justice Vela



 A jury convicted appellant, Michael Pereida, of murder, see Tex. Penal Code Ann.
§ 19.02(b)(1), (2) (Vernon 2003), and aggravated assault with a deadly weapon. See id.
§§ 22.01(a)(1), 22.02(a)(2) (Vernon Supp. 2009). The jury assessed punishment at ninety
years' and twenty years' imprisonment, respectively. The sentences were ordered to run
concurrently. In three issues, appellant challenges the sufficiency of the evidence to
support his convictions, and he complains that he was denied a fair and impartial trial. We
affirm.

I. Factual Background


 On June 19, 2008, Eva Ybarra received a phone call from Rachel Adame, who told
her that Misty Torres, Maricela "Chata" Ybarra, and others "wanted a fight." Eva went to
the corner of 10th and Booty Streets in Corpus Christi where she and Chata started fighting
with each other. After their fight, Rachel and Misty fought each other. During the fight, Eva
saw appellant, whom she knew as "Slow," running toward the passenger side of Misty's
vehicle. Eva stated that appellant took a gun from the vehicle and started shooting. 
Rachel saw shots fired from the front-passenger side and back-passenger side of Misty's
vehicle. Maria Cortez, who was present during the fight, saw appellant shoot her boyfriend,
Jose Gomez. A.S., a child witness who was present at the scene, testified that during the
fight he heard gunshots and got shot "[o]n my hip" and that the bullet went out "the back
of my leg." He did not see who shot him, but he testified that he saw two people holding
guns.

 Justin Sanchez, another witness, testified that he saw two people with guns during
the fight and that he saw appellant "in the passenger's seat of [Misty's] vehicle shooting the
gun." Sanchez could not confirm the identity of the person who shot A.S.

 Maria Rosales and her daughter, F.T., (1) had accompanied Eva Ybarra to the fight. 
Rosales testified that during the fight, appellant "fired a warning shot" into the air. At trial,
the prosecutor asked Rosales, "After the initial warning shot was fired, did you actually see
any other person shoot?", she said, "The brother," whom she knew as "'Pizzi.'" Rosales
also saw another man shooting "[f]rom the vehicle." According to Rosales, appellant got
into the front-passenger side of Misty's vehicle. As the vehicle was driving away, shots
came from the front-passenger side. When the prosecutor asked F.T., "Who did you see
draw out their weapons?", she said, "'Slow' and 'Pizzi"'. F.T. identified appellant as the
person she knew as "Slow." F.T. saw Pizzi "shooting randomly." When the prosecutor
asked F.T., "Do you recall testifying at a previous trial that the person you know as 'Slow'
fired four shots and that his brother[ (2)] fired five to six shots?", she said, "Yes, sir."

 "Chata" testified that on the day of the shooting, Misty and two of Misty's "'brothers'"
arrived at her residence. Chata and her niece, V.A., (3) got into Misty's vehicle. When Misty
picked up a younger, third male, who had a gun, Chata saw that Misty's other two male
passengers had guns, too. When Misty stopped at the corner of 10th and Booty Streets,
Chata got out and started fighting with Rachel. Chata testified that when Eva arrived at the
scene, "I just went after Eva and I started fighting her." At some point, Chata saw "the two
guys[ (4)] that were with us run to the vehicle." She did not see either of these two men take
out a gun. After she heard gunshots, Chata got into Misty's vehicle and saw the younger
man, who Misty had picked up earlier, take his gun out and fire it. Chata also saw Misty's
front-seat passenger, whom she identified as appellant, pull out a gun, but she did not see
him fire it. Misty drove to Morgan and Crosstown where the guns were thrown out of the
vehicle.

 V.A. testified that on June 19, 2008, she, Chata, Misty, and three men went in
Misty's vehicle to 10th and Booty Streets to see a fight between Chata and Eva. V.A.
stated that "[w]hen we were leaving" after the fight, two of the men inside Misty's vehicle,
one of whom she knew as "Jose" and the other whom she identified as appellant, fired their
weapons "out the windows." Misty drove to a McDonald's restaurant near the freeway. 
There, everybody except Misty got out of the vehicle. When the prosecutor asked V.A.,
"Prior to the guys getting out of the vehicle, did you see anybody get rid of anything?", she
said, "They threw the guns in the grass." On cross-examination, V.A. testified that "there
were three guns thrown out by three guys."

 After the shooting, Diego Rivera, a crime-scene technician, recovered four .25
caliber shell casings from the scene. He found a bullet hole in the wall of an apartment
near the corner of 10th and Booty Streets, and he recovered a bullet fragment from inside
that apartment.

 Caroline Martinez, a firearms examiner, testified that the bullet fragment recovered
from the apartment was from a .38 caliber bullet fired from a revolver, which would not
dispense a shell casing. She also opined that a .25 caliber shell casing recovered from
Misty's vehicle matched the four casings recovered from the crime scene. All of these
casings were fired from the same .25 caliber firearm. A .25 caliber bullet was recovered
from the body of Jose Gomez; however, Martinez could not determine whether the bullet
removed from Gomez's body came from the same gun that fired the five .25 caliber shell
casings.


 Officer Jason Smith obtained a videotaped statement (5) from appellant in which
appellant said that when he was leaving 10th and Booty Streets, he was sitting in the
driver's seat, Misty was in the front-passenger seat, Wii-Man (6) and Pizzi were in the second
row of seats, and V.A. and Chata were in the third row of seats. Officer Smith testified that
Jessica Amador told him that appellant was sitting in the driver's seat when Misty's vehicle
left the scene. In his video-taped interview, appellant stated that Wii-Man was the only
shooter. 

 Dr. Ray Fernandez, the Nueces County Medical Examiner, performed Gomez's
autopsy and testified that "[t]he cause of death was a gunshot wound to the chest." He
recovered the bullet from between the tenth and eleventh rib.

II. Discussion


A. Sufficiency of the Evidence

 We first address issues two and three together. In issue two, appellant contends
the evidence is insufficient to sustain his convictions because the circumstantial evidence
only established his presence at the crime scene. In issue three, he contends the
evidence is insufficient to show that the offenses were committed intentionally.

 1. Standards of Review

 "'In assessing the legal sufficiency of the evidence to support a criminal conviction,
we consider all the evidence in the light most favorable to the verdict and determine
whether, based on that evidence and reasonable inferences therefrom, a rational juror
could have found the essential elements of the crime beyond a reasonable doubt.'" 
Roberts v. State, 273 S.W.3d 322, 326 (Tex. Crim. App. 2008) (quoting Hooper v. State,
214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). In a factual-sufficiency review, the only
question to be answered is: "Considering all of the evidence in a neutral light, was a jury
rationally justified in finding guilt beyond a reasonable doubt?" Grotti v. State, 273 S.W.3d
273, 283 (Tex. Crim. App. 2008). Evidence can be deemed factually insufficient in two
ways: (1) "the evidence supporting the conviction is 'too weak' to support the fact finder's
verdict"; or (2) "considering conflicting evidence, the fact finder's verdict is 'against the
great weight and preponderance of the evidence.'" Laster v. State, 275 S.W.3d 512, 518
(Tex. Crim. App. 2009) (quoting Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App.
2006)). When a court of appeals conducts a factual-sufficiency review, it must defer to the
jury's findings. Id. The court of criminal appeals has "set out three 'basic ground rules'
implementing this standard." Id. (quoting Watson, 204 S.W.3d at 414). First, the appellate
court must consider all of the evidence in a neutral light, as opposed to in a light most
favorable to the verdict. Id. Second, the appellate court "may only find the evidence
factually insufficient when necessary to 'prevent manifest injustice.'" Id. (quoting Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). Third, the appellate court must
explain why the evidence is too weak to support the verdict or why the conflicting evidence
greatly weighs against the verdict. Id. Although the verdict is afforded less deference
during a factual-sufficiency review, an appellate court is not free to "override the verdict
simply because it disagrees with it." Id.

 2. Applicable Law

 Our review of a legal and factual sufficiency challenge should be examined under
the principles of review for a hypothetically correct jury charge. Grotti, 273 S.W.3d at 280-81. "'Such a charge [is] one that accurately sets out the law, is authorized by the
indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily
restrict the State's theories of liability, and adequately describes the particular offense for
which the defendant was tried.'" Villarreal v. State, 286 S.W.3d 321, 327 (Tex. Crim. App.
2009) (quoting Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

 A person commits the offense of murder if he or she intentionally or knowingly
causes the death of an individual or intends to cause serious bodily injury or commits an
act clearly dangerous to human life that causes the death of an individual. See Tex. Penal
Code Ann. § 19.02(b)(1), (2). A person commits the offense of assault if that person
intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or
knowingly threatens another with imminent bodily injury. Id. § 22.01(a)(1), (2). The offense
becomes aggravated assault if the person committing the assault uses a deadly weapon
during the commission of the offense. Id. § 22.02(a)(2).

 A person acts intentionally when it is his or her conscious desire to cause the result
of his or her conduct. Id. § 6.03(a) (Vernon 2003). A person acts knowingly when he or
she is aware that his or her conduct is reasonably certain to cause the result. Id. § 6.03(b). 
A person's knowledge and intent may be inferred from the "acts, words, and conduct of the
accused." Hart v. State, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

 A person is criminally culpable as a party if, with intent to promote or assist the
commission of the offense, the person solicits, encourages, aids, directs, or attempts to
aid, another person in commission of the offense. Tex. Penal Code Ann. § 7.02(a)(2)
(Vernon 2003). In reviewing the sufficiency of the evidence to support a defendant's
participation as a party, "we may consider 'events occurring before, during and after the
commission of the offense, and may rely on actions of the defendant which show an
understanding and common design to do the prohibited act.'" King v. State, 29 S.W.3d
556, 564 (Tex. Crim. App. 2000) (quoting Ransom v. State, 920 S.W.2d 288, 302 (Tex.
Crim. App. 1994)).

 3. Analysis of Sufficiency Challenges

 A rational jury could have determined the following from the evidence: (1) appellant
went with two other men to a fight; (2) appellant and the two other men brought guns to the
fight; (3) after the fight, appellant and one of the other men fired their guns; (4) during the
shooting, appellant shot and killed Gomez and A.S. was shot in the hip; (5) the four .25
caliber shell casings recovered from the scene and the .25 caliber shell casing recovered
from Misty's vehicle were fired from the same weapon; and (6) Gomez was killed by a .25
caliber bullet. Furthermore, the evidence showed that appellant fled the scene after the
shooting. A fact finder may draw an inference of guilt from the circumstance of flight from
the crime scene. Clayton v. State, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007). In
addition, appellant's attempt to conceal his weapon by throwing it in the grass is probative
of wrongful conduct and is also a circumstance of guilt. See Guevara v. State, 152 S.W.3d
45, 50 (Tex. Crim. App. 2007) (stating that "[a]ttempts to conceal incriminating evidence,
are probative of wrongful conduct and are also circumstances of guilt").

 Controverting evidence showed that: (1) appellant gave a statement to the police
in which he told them that when Misty's vehicle left 10th and Booty streets, he was seated
in the driver's seat and that Wii-Man was the only shooter; (2) no weapons were recovered;
(3) there was no physical evidence linking appellant to either Gomez's murder or the
aggravated assault of A.S.; and (4) appellant's fingerprints were not found on any of the
shell casings. Even though appellant told police that Wii-Man was the only shooter, the
jury apparently chose to believe the witnesses' testimony identifying appellant as one of
the shooters. The jury is the exclusive judge of the facts proved and of the weight given
to the testimony. Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979). Therefore, the
jurors were free to accept or reject any or all of the witnesses' testimony. See Davila v.
State, 147 S.W.3d 572, 575 (Tex. App.-Corpus Christi 2004, pet. ref'd) (citing Alvarado
v. State, 818 S.W.2d 100, 105 (Tex. App.-San Antonio 1991, no pet.)); see also Lancon
v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) (stating "[t]he jury is in the best
position to judge the credibility of a witness because it is present to hear the testimony, as
opposed to an appellate court who relies on the cold record"). By convicting appellant, the
jury obviously chose to accept the testimony offered by the State and reject the testimony
favorable to appellant. We must defer to the jury's determination. See Clayton, 235
S.W.3d at 778 (stating that "[w]hen the record supports conflicting inferences, we presume
that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to
that determination"). Even though the witnesses testified to different versions of the events
surrounding the shooting of both Gomez and A.S., a jury is free to accept one version of
the facts and to reject another or to reject any part of a witness's testimony. Penagraph
v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). Furthermore, a verdict is not
manifestly unjust merely because the jury resolved any conflicting views of the evidence
in the State's favor. See Cain, 958 S.W.2d at 408-09.

 Viewing the evidence in the light most favorable to the verdict, we conclude the
evidence is legally sufficient for a rational jury to find appellant guilty as a party or a
principal to Gomez's murder and to the aggravated assault of A.S. beyond a reasonable
doubt. After reviewing all of the evidence in a neutral light, we conclude that the evidence
supporting the convictions is not so weak that the fact-finder's determination is clearly
wrong and manifestly unjust, or that the verdict is against the great weight and
preponderance of the evidence. We conclude that the evidence is legally and factually
sufficient to support the convictions. Issues two and three are overruled.

B. Appellant's Right to a Fair Trial


 In issue one, appellant contends the State denied him a fair and impartial trial
because the Corpus Christi Police Department (CCPD) failed to gather and process
evidence that was material and relevant to his defense.

 The facts showed that the shooting occurred about 3:55 p.m. on June 19, 2008. 
That day, between 6:00 p.m. and 6:30 p.m., appellant arrived at CCPD where Officer
Jason Smith requested that a gunshot residue (GSR) test be performed on appellant's
hands. He did not confiscate appellant's clothes and did not request that a GSR test be
performed on appellant's clothing. At 9:30 that evening, a CCPD crime-scene technician
conducted the GSR test on appellant's hands and sent the test samples to a DPS lab for
analysis. However, Caroline Martinez, a CCPD firearms examiner, testified that DPS did
not analyze these samples because "[i]t's the policy of the Department of Public Safety lab
not to do analysis after four hours from the time of the shooting to the time of collection.
. . ." She testified that because more than four hours had elapsed from the time of the
shooting to the time the GSR test was conducted, DPS did not analyze the samples. 

 Appellant argues that had his clothes been tested for the existence of nitrate
particles, he "might not have even been charged with this crime." Furthermore, he argues
that he was denied a fair trial because CCPD was "either not aware or [was] totally derelict
in [its] duties to administer the GSR test within the time limits prescribed by the DPS lab." (7)

 To preserve error, a defendant must make a timely and specific objection as soon
as the basis for the objection becomes apparent, and the complaint on appeal must
comport with the trial objection. See Tex. R. App. P. 33.1(a)(1)(A); Heidelberg v. State, 144
S.W.3d 535, 537 (Tex. Crim. App. 2004). Even constitutional issues can be waived if they
are not brought to the trial court's attention. See Wright v. State, 28 S.W.3d 526, 536 (Tex.
Crim. App. 2000). In this case, appellant did not object to the failure to timely conduct the
GSR test on his hands or to conduct any GSR test on his clothing. We conclude appellant
did not preserve his complaint for appellate review. See Pena v. State, 285 S.W.3d 459,
464 (Tex. Crim. App. 2009). (8) Issue one is overruled.

III. Conclusion


 We affirm the trial court's judgment of conviction for both offenses.

 


 ROSE VELA 

 Justice



Do not publish.

Tex. R. App. P. 47.2(b).


Delivered and filed the

29th day of July, 2010.
1. F.T. is a child witness.
2. Appellant's brother's name is Mark Pereida.
3. V.A. is a child witness.
4. Chata testified that neither of these two men was the younger, third male who Misty picked up on the
way to 10th and Booty Streets.
5. During the guilt-innocence phase, the State introduced a recording of this interview into evidence as
State's exhibit 6 and played it to the jury.
6. The evidence showed that "Wii-Man" is the nickname for co-defendant Jose Cardenas.
7. Appellant has not cited any authority requiring law enforcement to conduct a gunshot-residue test
on a person to determine whether he or she was the person who had fired a gun. In Munoz v. State, No. 13-08-00239-CR, 2009 WL 695462, at *11 (Tex. App.-Corpus Christi Jan. 15, 2009, pet. ref'd) (mem. op., not
designated for publication), the defendant argued on appeal that "law enforcement was required to conduct
gun residue tests on him to determine if it was he who fired the gun that night." Id. We stated that the
defendant "has not cited to, nor are we aware of, any authority requiring law enforcement to conduct a gun
residue test to prove that a defendant has committed an aggravated assault." Id.
8. See also Rodriguez v. State, No. 13-07-00494-CR, 2009 WL 2914257, at *4-5 (Tex. App.-Corpus
Christi, Aug. 31, 2009, no pet.) (mem. op., not designated for publication).